STATE OF NORTH CAROLINA v. LARRY EUGENE ALLRED

No. COA97-1377

(Filed 6 October 1998)

### 1. Criminal Law— motion in limine—opening statement—defendant restricted

The trial court neither erred nor abused its discretion in a prosecution for kidnapping and robbery by denying defendant's motion in limine to forecast evidence in his opening statement regarding the reputation of the house where the crime was committed as a crack house, or by granting the State's motion in limine to restrict defense counsel from making such a forecast in his opening statement. Counsel in opening statements may not refer to inadmissible evidence; out-of-court statements which form the reputation of a particular place are deemed hearsay and are inadmissible when their only purpose is to prove the contents of the statements. Moreover, the court permitted defense counsel to forecast that this was a disagreement over a drug transaction rather than a robbery or kidnapping and invited defense counsel to pose questions concerning the character of the house as such issues proved relevant in the context of the trial. N.C.G.S. § 8C-1, Rule 801(c).

### 2. Evidence— prior offense—modus operandi—admissible

The trial court did not err in a prosecution for robbery and kidnapping by admitting testimony regarding defendant's alleged participation in an earlier robbery. Many aspects of the two robberies are strikingly similar and the evidence was properly admitted under N.C.G.S. § 8C-1, Rule 404(b) to establish defendant's modus operandi. Furthermore, defendant failed to show that the evidence was more prejudicial than probative.

### 3. Robbery— motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss charges of robbery and attempted robbery where defendant entered a house, displayed a revolver, and ordered everyone to hand over their valuables, and three of those present had no valuables to surrender while two were induced to hand over money.

STATE v. ALLRED

[131 N.C. App. 11 (1998)]

**4. Kidnapping— second degree—restraint—insufficient**

　　The trial court erred in a kidnapping and robbery prosecution by denying defendant's motion to dismiss the kidnapping charges for insufficient evidence as to Hampton and McBee where they were not moved or injured in any way and the restraint used against them was an inherent part of the robbery and did not expose them to any greater danger than that required to complete the robbery.

**5. Kidnapping— second degree—restraint and removal—insufficient**

　　The trial court erred in a robbery and kidnapping prosecution by denying defendant's motion to dismiss the kidnapping charges for insufficient evidence as to Alexander where defendant held him at gunpoint during the robbery, took him to his bedroom to get his "stash," and Alexander was made to sit on the bed while defendant searched for the stash, but at no time did defendant or his accomplice injure Alexander in any way. This restraint and removal were necessary to complete the armed robbery, as it was defendant's objective to obtain the money Alexander was believed to have kept hidden in his bedroom. Alexander's removal was a mere technical asportation and insufficient to support a conviction for a separate kidnapping offense.

**6. Kidnapping— second degree—restraint and removal—sufficiency of evidence**

　　The trial court did not err in a kidnapping and robbery prosecution by denying defendant's motion to dismiss the kidnapping charges as to Graves where defendant's accomplice entered Graves' bedroom, grabbed him by the collar, dragged him into the living room, and ordered him to sit on the couch. Nothing was taken from him and no attempt was made to rob him of anything. The removal was not an integral part of any robbery committed against him, but a separate course of conduct designed to prevent him from hindering the robbery of the other occupants.

　　Appeal by defendant from judgments entered 26 February 1997 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 25 August 1998.

STATE v. ALLRED

[131 N.C. App. 11 (1998)]

*Attorney General Michael F. Easley, by Assistant Attorney General Victoria L. Voight, for the State.*

*Walter T. Johnson, Jr. for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Larry Eugene Allred appeals from the judgments entered upon his convictions of four counts of second-degree kidnapping, three counts of attempted robbery with a dangerous weapon, and two counts of robbery with a dangerous weapon. For the reasons set forth in the discussion below, we find no error in part and vacate in part.

The State presented evidence tending to show the following: On the night of 19 March 1996, April McBee, Angel Lyles, and Marilyn Lyles were guests in the home of Alfred Alexander, Wade Hampton, Alfred Graves, and Ray Doughty, which was located at 116 Avalon Road in Greensboro, North Carolina. Alexander, Hampton, Angel Lyles, and Marilyn Lyles were seated in the living room. McBee was in the kitchen, and Graves was asleep in his bedroom. At midnight, there was a knock at the front door. Angel Lyles answered the door, and two men, later identified as defendant and Steven Edwards, entered the living room and inquired about a female acquaintance. Alexander and his guests were explaining that they had not seen the woman, when defendant pulled out a revolver and Edwards removed a shotgun from beneath his coat. By this time, McBee had returned to the living room. The two men then ordered everyone present to hand over their money and jewelry. Hampton gave the robbers his wallet containing $20, and Alexander turned over the $200 he had in his pockets. McBee, Marilyn Lyles, and Angel Lyles told the defendant and Edwards that they had no money or jewelry to relinquish.

The commotion in the living room woke Graves, so he got up to see what was happening. Before he reached his bedroom door, Edwards kicked the door in, grabbed Graves by the collar, dragged him into the living room, and pushed him down on the couch. Neither defendant nor Edwards attempted to take anything from Graves. Once defendant and Edwards had subdued everyone in the living room, Edwards told defendant to take Alexander back into his bedroom to get his "stash." Edwards guarded the other occupants, while defendant escorted Alexander to the bedroom. There, defendant forced Alexander to sit on the bed, as he searched unsuccessfully for the hidden "stash." After several minutes, Edwards entered the bed-

room, nudged Alexander in the shoulder with the barrel of the shotgun, and told him to "give it up." Alexander stated that he had given them all of the money he had, so defendant and Edwards returned to the living room, leaving Alexander alone in his bedroom.

Upon returning to the living room, Edwards aimed his shotgun at the occupants and threatened to kill them. Defendant intervened by pushing the gun away and telling Edwards that it was not necessary to kill anyone. However, while they were fleeing, Edwards shot at the house, stating that he wanted to give the victims something by which to remember him. Alexander, having heard the threat and the shot, retrieved a revolver from under his pillow, ran to the front door, and fired at the perpetrators as they drove away.

After defendant and Edwards fled, one of the victims went to a neighbor's house to call the police. Officers Michael Fraterrigo and Jason Padgett of the Greensboro Police Department responded to the call and took the witnesses' statements. While at the scene, Officer Padgett received a call that an individual, later determined to be defendant, was being admitted to Moses Cone Hospital with multiple gunshot wounds. At the hospital, Officer Padgett conferred with Officer L.T. Marshall, who was present when Edwards and a man named James Brooks entered the emergency room with defendant, who had been shot three times. Officer Marshall testified that Edwards told him that he and defendant were traveling on English Street when someone fired several shots at their vehicle. According to Edwards, they stopped to pick up Brooks on their way to the emergency room.

Over defendant's objection, Kimberly Carter testified regarding a previous robbery allegedly committed by defendant. Carter stated that at approximately midnight on 9 March 1996, there was a knock at her door. Her two-year-old daughter answered the door before Carter was able to stop her. By the time Carter reached the door, two men had pushed their way inside her home. One of the men, whom she identified as defendant, grabbed her by the neck, pushed her into the wall, and yelled "Give me your stash." Defendant and his accomplice then spotted Carter's purse, took $80 from one of the inside pockets, and fled.

At the close of the State's evidence, defendant moved to dismiss all of the charges. The trial court denied the motion, and defendant proceeded with his defense. Pamela Haislip testified on defendant's behalf. She stated that she had introduced defendant to Alexander

and that soon thereafter, defendant began selling drugs for Alexander. Haislip further testified that shortly before the 19 March 1996 incident, she saw Alexander at a local store, and he advised her to tell defendant to bring him his money right away.

Defendant testified that on the evening of 19 March 1996, he asked Edwards for a ride to Alexander's house so that he could settle some "business." Defendant maintained that Edwards remained in the car while he spoke with Alexander. According to defendant, the conversation did not go well, and as he tried to leave the house, Alexander shot him three times for failing to pay for drugs that Alexander had given him to sell.

At the close of all the evidence, the trial court submitted the case to the jury, and the jury found defendant guilty of four counts of second-degree kidnapping, three counts of attempted armed robbery, and two counts of armed robbery. From the judgments entered on the jury's verdicts, defendant appeals.

---

We note initially that defendant's appeal is fraught with procedural violations, which subject the appeal to dismissal. First, in violation of Rule 12(a) of the North Carolina Rules of Appellate Procedure, the record on appeal was filed 35 days after it was settled. Under Rule 12(a), the record must be filed with the Clerk of this Court within 15 days after the record has been settled. N.C.R. App. P. 12(a). Consequently, the filing of the record in this case was considerably late.

Defendant's brief is also in violation of our Appellate Rules. Pursuant to Rule 28(b)(3), each party's brief must contain "[a] full and complete statement of the facts." N.C.R. App. P. 28(b)(3). The rule further provides that "[t]his should be a non-argumentative summary of all material facts underlying the matter in controversy which are necessary to understand all questions presented for review, supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits, as the case may be." *Id.* Defendant fails to observe this rule by submitting an incomplete and dubious statement of the facts which contains no references to the relevant transcript or record pages. Additionally, defendant violates Rule 28(b)(5) in that he fails to reference the pertinent assignments of error and the pages at which they appear in the record immediately following each argument presented. *See* N.C.R. App. P. 28(b)(5). Given the many rule violations, defendant's appeal is worthy of dismissal. Nonetheless, in the interests of justice, we elect to exercise our discretion under Rule 2

and suspend the above requirements. *See* N.C.R. App. P. 2. We caution, however, that we would not be so inclined, but for the fact that we find some merit to defendant's appeal. Hence, we proceed with our analysis of defendant's assignments of error.

[1] By his first assignment of error, defendant contends that the trial court committed reversible error in denying his motion in limine to forecast evidence in his opening statement regarding the reputation of 116 Avalon Road as a "crack house." In his brief, however, defendant argues that the trial court's error was in granting the State's motion in limine to restrict defense counsel from making such a forecast in his opening. It appears from the record that these motions were interwoven and that the trial court treated them as counterparts to a single motion. Therefore, we will consider this argument to be properly presented for our review. *See* N.C.R. App. P. 9, 10 (stating that scope of review on appeal limited to those issues presented by assignments of error in the record on appeal). Examining this argument on its merits, we discern no prejudicial error.

"In a criminal jury trial, '[e]ach party must be given the opportunity to make a brief opening statement.'" *State v. Mash*, 328 N.C. 61, 64, 399 S.E.2d 307, 310 (1991) (quoting N.C. [Gen. Stat.] § 15A-1221(a)(4)). The extent and scope of an opening statement are entrusted to the discretion of the trial judge. *State v. Fisher*, 336 N.C. 684, 445 S.E.2d 866 (1994). The purpose of an opening statement is to set forth a "general forecast" of the evidence. *State v. Freeman*, 93 N.C. App. 380, 389, 378 S.E.2d 545, 551 (1989) (citation omitted). Counsel for the parties may not, however, "(1) refer to inadmissible evidence, (2) 'exaggerate or overstate' the evidence, or (3) discuss evidence [they] expect[] the other party to introduce." *Id.* (citations omitted).

The State moved to exclude the evidence of the reputation of 116 Avalon Road pursuant to the general rule in North Carolina that "evidence concerning the reputation of a place or neighborhood will constitute hearsay and be inadmissible." *State v. Lee*, 51 N.C. App. 344, 349, 276 S.E.2d 501, 505 (1981). Defendant contends that this rule only applies where the evidence is offered against a criminal defendant. Admittedly, our research has revealed no cases where the State sought to exclude evidence of the reputation of a particular place. However, applying the well-settled principles governing hearsay evidence, we must conclude that the reputation of 116 Avalon Road was inadmissible, absent an exception.

**STATE v. ALLRED**

[131 N.C. App. 11 (1998)]

Rule 801(c) of the North Carolina Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c). Therefore, the out-of-court statements which form the reputation of a particular place—in this case, statements that 116 Avalon Road is a crack house—are deemed hearsay and, thereby, inadmissible when their only purpose is to prove the very contents of the statements. *See State v. Kerley*, 87 N.C. App. 240, 360 S.E.2d 464 (1987) (noting that statement made by one other than testifying witness is hearsay if offered to prove its truth and not encompassed by an exception). Accordingly, we conclude that the trial court properly restricted defense counsel from referring to the reputation of 116 Avalon Road in his opening statement.

Moreover, we note that while the trial court prevented defense counsel from mentioning in his opening that the house was reputed to be a drug location, it permitted defense counsel to foreshow that the incident occurring on 19 March 1996 was not a robbery or kidnapping, but a disagreement over a drug transaction. Furthermore, the trial court invited defense counsel to pose questions, subject to its evidentiary rulings, concerning the character of the house during examination of the witnesses, as such issues proved relevant to the context of the trial. In light of the foregoing, we discern neither error nor abuse of discretion in the trial court's decision, and this assignment of error is overruled.

[2] With his second assignment of error, defendant argues that the trial court erroneously admitted Kimberly Carter's testimony regarding defendant's alleged participation in the 9 March 1996 robbery of her home. Defendant contends that this evidence of prior crimes was inadmissible under Rule 404(b) of the North Carolina Rules of Evidence. We cannot agree.

Rule 404(b) of our Rules of Evidence is a general rule permitting the introduction of relevant evidence of other crimes, wrongs or acts committed by the defendant. *State v. Burr*, 341 N.C. 263, 289, 461 S.E.2d 602, 615 (1995). This rule is " 'subject to but *one exception* requiring exclusion [of the evidence] if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.' " *Id.* (quoting *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)). Thus, although the evidence of the defendant's other crimes may tend to show his inclination to commit them, the evidence is admissible under Rule

404(b), as long as it is also relevant for some other proper purpose. *Id.* Such other purposes include establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C.R. Evid. 404(b).

The State argued that the evidence of defendant's alleged involvement in the 9 March 1996 robbery of Carter was admissible to prove defendant's *modus operandi*. The trial court admitted the evidence and instructed the jury that if it found the evidence to be believable, it could consider the evidence for the limited purpose of determining whether it established a common scheme or plan. In deciding if evidence of a prior crime is admissible for this purpose, the test is whether the incident in question is "sufficiently similar" to the event for which the defendant is presently on trial and "not too remote in time so as to be more probative than prejudicial under the balancing test of G.S. 8C-1, Rule 403." *State v. Schultz*, 88 N.C. App. 197, 202, 362 S.E.2d 853, 857 (1987). "Under Rule 404(b) a prior act or crime is 'similar' if there are 'some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both.' " *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 890-91 (1991) (quoting *State v. Green*, 321 N.C. 594, 603, 365 S.E.2d 587, 593, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988)), *quoted in State v. Dickens*, 346 N.C. 26, 47-48, 484 S.E.2d 553, 565 (1997). Whether to exclude admissible evidence of prior crimes under Rule 403 is a matter left to the trial court's discretion. *State v. Gary*, 348 N.C. 510, 501 S.E.2d 57 (1998).

Many aspects of the two robberies in this case are strikingly similar. Both incidents began with a knock at the door at approximately midnight. Additionally, both cases involved two perpetrators, and in each case, the victims were asked to give up their "stash." Equally noteworthy is that these robberies were committed within ten days of each other. In view of these similarities, we conclude that the evidence was properly admitted under Rule 404(b) to establish defendant's *modus operandi*. Furthermore, since defendant fails to show that this evidence was more prejudicial than probative, we hold that the trial court did not abuse its discretion in denying defendant's motion to exclude the evidence. Defendant's assignment of error, then, fails.

[3] Defendant next assigns error to the trial court's denial of his motion to dismiss all of the charges against him. We will address the robbery and kidnapping charges separately.

It is a well-settled rule that in considering a motion to dismiss criminal charges, the trial court must view all of the evidence, whether competent or incompetent, in the light most favorable to the State and must give the State every reasonable inference drawn from the evidence. *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997). The question for the trial court is whether the State presented substantial evidence of each element of the offense charged and of the defendant's guilt. *State v. Pryor*, 59 N.C. App. 1, 5, 295 S.E.2d 610, 614 (1982). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* However, any contradictions or discrepancies in the evidence are for the jury to resolve, and these inconsistencies, by themselves, do not serve as grounds for dismissal. *State v. Hamlet*, 312 N.C. 162, 169, 321 S.E.2d 837, 842 (1984).

Under North Carolina General Statutes section 14-87, the essential elements of robbery with a dangerous weapon are: "(1) the unlawful taking or attempted taking of personal property from another, (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means, and (3) danger or threat to the life of the victim." *State v. Donnell*, 117 N.C. App. 184, 188, 450 S.E.2d 533, 536 (1994). The evidence in this case, viewed in the light most favorable to the State, showed that defendant, with his accomplice, entered 116 Avalon Road, displayed a revolver and ordered everyone present to hand over their valuables. These actions induced Hampton to hand over $20 and Alexander to turn over $200. McBee, Angel Lyles, and Marilyn Lyles had no valuables to surrender. The State having presented "substantial evidence" that defendant committed armed robbery of Hampton and Alexander and attempted armed robbery of McBee, Angel Lyles, and Marilyn Lyles, we hold that the trial court properly denied defendant's motion to dismiss the robbery charges.

**[4]** Defendant also challenges the sufficiency of the evidence presented to support his convictions of second-degree kidnapping. As previously stated, "[i]n ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, which is entitled to every reasonable inference which can be drawn from that evidence." *Dick*, 126 N.C. App. at 317, 485 S.E.2d at 91. A defendant is guilty of the offense of second-degree kidnapping if he (1) confines, restrains, or removes from one place to another (2) a person (3) without the person's consent, (4) for

the purpose of facilitating the commission of a felony. N.C. Gen. Stat. § 14-39(a)(2) (Cum. Supp. 1997). Our Supreme Court, however, has recognized that "certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim" and has held that restraint "which is an inherent, inevitable feature of [the] other felony" may not be used to convict a defendant of kidnapping. *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). "The key question . . . is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping 'exposed [the victim] to greater danger than that inherent in the armed robbery itself.' " *State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (quoting *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981)), *quoted in State v. Beatty*, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998).

In the instant case, defendant was convicted of the second-degree kidnapping of Hampton, McBee, Alexander, and Graves. We will consider each of these victims in turn. With regard to the restraint of Hampton and McBee, the evidence shows only that defendant and his accomplice held them at gunpoint during the commission of the robbery. These victims were not moved, nor were they injured in any way. Under section 14-87(a), the restraint used against these victims was an inherent part of the armed robbery and did not expose them to any greater danger than that required to complete the robbery offense. Therefore, we hold that the restraint inflicted upon these victims was insufficient to support separate kidnapping convictions. The trial court erred in denying defendant's motion to dismiss, and we vacate defendant's convictions as to these kidnapping offenses.

[5] Regarding the restraint and removal of Alexander, the evidence shows that in addition to holding him at gunpoint during the commission of the robbery, defendant took Alexander back to his bedroom to get his "stash." While defendant searched for the stash, Alexander was made to sit on the bed, but at no time did defendant or his accomplice injure Alexander in any way. In light of our Supreme Court's decision in *Irwin*, 304 N.C. 93, 282 S.E.2d 439, we hold that this restraint and removal were necessary to complete the armed robbery, as it was defendant's objective to obtain the money Alexander was believed to have kept hidden in his bedroom.

In *Irwin*, the defendant forced the victim from her position near the fountain cash register to the back of the store where the pharmacy counter and safe were located. The Supreme Court reversed

defendant's kidnapping conviction, finding that the victim's removal to the rear of the store was an integral part of the armed robbery. *Id.* Applying this reasoning, we hold that "[Alexander's] removal was a mere technical asportation and insufficient to support a conviction for a separate kidnapping offense." *Id.* at 103, 282 S.E.2d at 446. The trial court, therefore, erred in denying defendant's motion to dismiss, and defendant's conviction of second-degree kidnapping with regard to Alexander is vacated.

**[6]** With regard to the restraint and removal of Graves, the evidence shows that defendant's accomplice entered his bedroom, grabbed him by the collar, dragged him into the living room, and ordered him to sit on the couch. Nothing was taken from Graves, and according to his testimony, no attempt was made to rob him of anything. Therefore, this removal was not an integral part of any robbery committed against him, but a separate course of conduct designed to prevent him from hindering defendant and his accomplice from perpetrating the robberies against the other occupants. *See State v. Davidson*, 77 N.C. App. 540, 335 S.E.2d 518 (1985) (upholding denial of motion to dismiss kidnapping charge where defendant forced victims into dressing room to remove them from view of passersby who might impede commission of robbery). As previously stated, under section 14-39,

> Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of: . . . (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony[.]

N.C.G.S. § 14-39(a)(2). Therefore, we hold that the trial court did not err in denying defendant's motion to dismiss the kidnapping charge with respect to Graves, and defendant's conviction of this offense stands.

Defendant fails to cite any authority in support of his final assignment of error. Accordingly, it is deemed abandoned. N.C.R. App. P. 28(b)(5).

Based upon all of the foregoing, we find no error with regard to defendant's convictions of armed robbery, attempted armed robbery, and second-degree kidnapping of Alfred Graves. However, we vacate

defendant's convictions of second-degree kidnapping with respect to Wade Hampton, April McBee, and Alfred Alexander.

No error in part; vacated in part.

Judges GREENE and SMITH concur.