STATE OF NORTH CAROLINA v. LARRY DONNELL JONES

No. COA04-399

(Filed 2 August 2005)

**1. Criminal Law— continuance denied—new evidence—not prejudicial**

The denial of defendant's motion for a continuance was not an abuse of discretion where his counsel first saw incriminating letters from defendant at the beginning of the trial for statutory rape and indecent liberties, but there was overwhelming evidence that defendant fathered the victim's child and defendant did not explain why he needed a continuance.

**2. Evidence— videotape—foundation**

A statutory rape and indecent liberties defendant failed to lay a proper foundation for admission of a videotape in which the victim denied having sex with defendant, and the trial court did not err by excluding it.

**3. Indecent Liberties— two charges—same act**

Defendant was erroneously convicted of two charges of indecent liberties, one characterized as "indecent liberties" and the other as "lewd and lascivious act," based on the same act.

STATE v. JONES

[172 N.C. App. 308 (2005)]

Although N.C.G.S. § 14-202.1(a) sets out alternative acts (indecent liberties and lewd and lascivious acts), a single act can support only one conviction.

**4. Sentencing— aggravating factors—*Blakely* error—jury finding required**

Defendant's sentence was remanded because it was aggravated based on a factor not found by a jury and not admitted by defendant.

**5. Constitutional Law— rape and indecent liberties—not double jeopardy**

Defendant was not subjected to double jeopardy by sentences for first-degree rape and indecent liberties.

Appeal by defendant from judgment entered 20 November 2003 by Judge W. Russell Duke, Jr., in Wayne County Superior Court. Heard in the Court of Appeals 17 November 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Lauren M. Clemmons, for the State.*

*Parish & Cooke, by James R. Parish for defendant.*

LEVINSON, Judge.

Defendant (Larry Jones) appeals from judgments entered upon his convictions of one count of first degree statutory rape and two counts of indecent liberties. We find no error in part, vacate in part, and remand.

The State's evidence at trial tended to show, in pertinent part, the following: "Bonnie"[1] testified that she was born on 25 January 1989, and was in the ninth grade. She met the defendant when she was a young child and he was dating her mother. The defendant first touched her private parts when she was six or seven years old. After Bonnie turned eleven, she and the defendant started having sexual intercourse on a regular basis so many times that Bonnie could not estimate the total number of incidents. They engaged in sexual relations in a variety of locations, including their respective homes, several different motels, and at an abandoned dwelling in the country. On occasion, defendant would "sign her out" of middle school so they

---

1. To preserve the victim's privacy, we will refer to her by the pseudonym "Bonnie."

could have intercourse at a motel. Bonnie also identified approximately fifteen letters from the defendant, in which he generally professed his love for her and his desire to see her and be with her.

When she was twelve years old, Bonnie became pregnant. The defendant continued to engage her in sexual intercourse, and he accompanied her to prenatal medical appointments. On 3 April 2002 Bonnie gave birth to a son, "Zeke"[2] who was later adopted. After she got pregnant, Bonnie was interviewed by local law enforcement authorities and caseworkers with the Wayne County Department of Social Services (DSS). Bonnie testified that defendant instructed her to lie about their relationship, so she initially told her mother, Goldsboro Police Investigator Page Learnard, and a DSS social worker that she never had a sexual relationship with defendant. Defendant also directed her to make a videotape recording: he set up the recording equipment, and her mother wrote down what she should say. Bonnie testified that on the tape she had denied having sex with defendant, but that she had lied on the videotape and in her initial statements to law enforcement officers, her mother, and DSS workers.

Bonnie's father testified to the contents of a letter from the defendant, in which he admitted he was Zeke's father, and expressed a wish that the child not be given up for adoption. Bonnie had confided to her father that she had a sexual relationship with the defendant.

Terry Harne, DSS case worker for Bonnie's son Zeke, testified to the contents of several letters the defendant had sent her. In his letters, defendant professed his love and concern for the baby, his hope that the child would not be adopted, and his wish to fight the pending termination of parental rights proceeding. The defendant did not deny paternity in any of these letters, and in one he suggested that Zeke be placed with defendant's other children, "his brothers."

Goldsboro Police Officer Page Learnard testified that when she first talked with Bonnie in 2001, Bonnie denied any improper physical contact with defendant. However, when Bonnie became pregnant the case was reopened, at which time Bonnie disclosed her relationship with defendant. Bonnie's statements to Learnard corroborated Bonnie's trial testimony that defendant started having sex with her when she was eleven years old, and that he had told her to lie to various adults and to lie on the videotape. Learnard

2. We refer to Bonnie's son by the pseudonym "Zeke" to protect his privacy.

also corroborated earlier testimony on the locations where the two had met to have sex.

Other evidence provided further proof that defendant was the father of Bonnie's child. The State offered evidence that Bonnie, Zeke, and the defendant had submitted samples for DNA testing. The results of this testing indicated to a 99.99% certainty that defendant was Zeke's father, and that the chances that someone else had fathered the child were ten million to one. Additionally, attorney Gordon Parker testified that he represented Wayne County DSS in a child support action brought against defendant to obtain child support for Zeke. After defendant was shown the results of DNA testing, he signed an acknowledgment of paternity in the case. Finally, two DSS social workers testified that defendant had called their office asking why he had to take a DNA test, inasmuch as he admitted paternity.

Defendant's evidence may be summarized, in pertinent part, as follows: Defendant recalled DSS worker Terry Harne and elicited testimony from her that defendant had denied fathering Bonnie's child on at least one occasion. Defendant's mother, Mary Elliott, testified that Bonnie's mother had brought her a videotape on 5 June 2001. The defendant testified that he knew Bonnie because he had once been engaged to her mother. He denied ever having sex with Bonnie. Other evidence will be discussed as it becomes relevant to the issues raised on appeal.

---

[1] Defendant argues first that the trial court erred by denying his motion to continue. Defense counsel moved for a continuance at the beginning of trial, on the grounds that he had just been provided with two new letters written by defendant which the State intended to introduce at trial. Counsel claimed that he needed a continuance in order to study these letters and discuss them with the defendant. The trial court denied his motion, and at trial the letters were introduced without objection. On appeal, defendant argues that the court's denial of his continuance motion "was an abuse of discretion" and denied the defendant "his due process rights and rights to effective assistance of counsel." We disagree.

The standard of review of a trial court's ruling on a motion for continuance is well-established:

Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the

trial court's ruling is not subject to review. When a motion to continue raises a constitutional issue, the trial court's ruling is fully reviewable upon appeal. Even if the motion raises a constitutional issue, a denial of a motion to continue is grounds for a new trial only when defendant shows both that the denial was erroneous and that he suffered prejudice as a result of the error.

*State v. Taylor*, 354 N.C. 28, 33-34, 550 S.E.2d 141, 146 (2001) (citing *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981), and *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982)). Further, to establish that the denial of a continuance motion was prejudicial,

"a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. To demonstrate that the time allowed was inadequate, the defendant must show how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion."

*State v. Williams*, 355 N.C. 501, 540-41, 565 S.E.2d 609, 632 (2002) (quoting *State v. Tunstall*, 334 N.C. 320, 329, 432 S.E.2d 331, 337 (1993)).

In the instant case, we find dispositive the question of whether the defendant has shown that the court's denial of his continuance motion, even if error, in any way prejudiced the defendant. The two letters at issue were written by the defendant and addressed to Terry Harne, the DSS caseworker for Bonnie's son Zeke. The letters generally contain declarations of defendant's love and concern for the baby. In addition, each includes certain statements that might be interpreted as oblique acknowledgments of paternity. For example, one letter proposes that Zeke be placed with defendant's other sons, whom he refers to as "his brothers"; the other letter argues against termination of his parental rights, in part so that Zeke might receive "the love and respect . . . that only a mother and father can give[.]"

The defendant failed to articulate, either at trial or on appeal, how a continuance would have helped him. The letters' legal relevance was primarily in relation to the issue of paternity, and to the extent that the letters admit paternity, they support the State's case. However, the State also offered overwhelming additional evidence that defendant was Zeke's father, including: (1) Bonnie's testimony that defendant fathered her child; (2) Bonnie's statements to Learnard; (3) defendant's numerous other letters, including a letter to

Bonnie's father admitting paternity; (4) defendant's acknowledgment of paternity in the child support action; and (5) the results of DNA testing showing a 99.99% probability that defendant was the baby's father. This evidence was largely available to defendant before trial; therefore, the discovery of these two additional letters should not have changed defendant's trial strategy. Moreover, defendant does not explain <u>why</u> he needed a continuance, other than to "discuss this damaging new evidence." We conclude that "[d]efendant has been unable to show that he was materially prejudiced or that he would have been better prepared had the continuance been granted. Therefore, we conclude that the trial court did not abuse its discretion, and we thus overrule this assignment of error." *Williams*, 355 N.C. at 541, 565 S.E.2d at 632-33.

---

**[2]** Defendant argues next that the trial court committed reversible error by excluding a videotape in which Bonnie denied having sex with the defendant. The court ruled that the defendant had failed to lay a proper foundation for admission of the tape. We agree with the trial court.

The standard for admission of a videotape is stated in *State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988) (citations and internal quotation marks omitted), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990):

> The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed, (illustrative purposes); (2) proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . .; (3) testimony that the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing (substantive purposes); or (4) testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area "photographed."

In the instant case, the evidence failed to meet any of the *Cannon* criteria. None of the witnesses offered testimony about the operation or testing of the recording equipment. Bonnie testified that defendant and her mother set up videotaping equipment before leaving her alone to make a recording. She did not know if the tape offered in court was the original or one of some six copies that were made. She did not testify that she viewed the tape right after it was made, and

did not testify that the tape proffered by defendant accurately depicted what she had filmed. Defendant's mother testified only that Bonnie's mother gave her a videotape, but she had no first-hand knowledge pertaining to the contents of the tape or to the chain of custody. The defendant was absent during most of the film-ing, and did not watch the tape after it was made. We conclude that the trial court did not err by ruling that defendant failed to lay a proper foundation for admission of the videotape. This assignment of error is overruled.

**[3]** Defendant next argues that the trial court erred by submitting to the jury two separate charges of indecent liberties based on the same act. We agree.

Bonnie testified at trial that she had sexual intercourse with the defendant on many occasions, but did not identify any specific dates. The indictment alleged that the offenses occurred on 1 June 2001, which was nine months before Zeke's birth and thus repre-sents an approximate date of his conception. There was no evi-dence of multiple sexual acts on that or any other date. However, defendant was charged in a single indictment with first degree statu-tory rape in violation of N.C.G.S. § 14-27.7A (2003), and with two vio-lations of N.C.G.S. § 14-202.1 (2003), one characterized as "inde-cent liberties" and the other as "lewd and lascivious act." We conclude this was error.

G.S. § 14-202.1 provides in relevant part that:

(a)  A person is guilty of taking indecent liberties with children if . . . he either:

> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or grat-ifying sexual desire; or

> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or mem-ber of the body of any child of either sex under the age of 16 years.

The State argues that Subsections (a)(1) and (a)(2) are <u>separate criminal offenses</u> with different elements because one's commis-sion of a "lewd and lascivious act" does not require proof of an immoral purpose. The State cites no cases in support of this posi-

tion, and we find none. To obtain a conviction for a violation of G.S. § 14-202.1(a)(1):

> [T]he State must present substantial evidence of each of the following elements: "(1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he willfully took or attempted to take an indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire."

*State v. Every*, 157 N.C. App. 200, 205, 578 S.E.2d 642, 647 (2003) (quoting *State v. Rhodes*, 321 N.C. 102, 104-05, 361 S.E.2d 578, 580 (1987)). "The first four elements may be proved by direct evidence[.]" *State v. Roberts*, 166 N.C. App. 649, 653, 603 S.E.2d 373, 376 (2004), *disc. review denied*, 359 N.C. 325, 611 S.E.2d 843 (2005). "The fifth element, that the action was for the purpose of arousing or gratifying sexual desire, may be inferred from the evidence of the defendant's actions." *Rhodes*, 321 N.C. at 105, 361 S.E.2d at 580. Indeed:

> our Supreme Court has stated that "the evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child 'for the purpose of arousing or gratifying sexual desire.' Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial."

*State v. Shue*, 163 N.C. App. 58, 61, 592 S.E.2d 233, 235 (quoting *State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180 (1990)), *disc. review denied*, 358 N.C. 380, 597 S.E.2d 773 (2004).

In *Hartness*, the Court held that G.S. § 14-202.1 states disjunctively two alternative means of proving **one element** of the offense of indecent liberties:

> [In t]he case *sub judice* . . . a single wrong [may be] established by a finding of various alternative elements. . . . [T]he crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts. . . .

*Hartness*, 326 N.C. at 566-67, 391 S.E.2d at 180. Accordingly, although the statute sets out alternative acts that might establish an element of the offense, a single act can support only one conviction.

In the instant case, the defendant was convicted of two separate violations of G.S. § 14-202.1 arising out of a single act on 1 June 2001.

We conclude that this was error, and that judgment may be properly entered on Count II of the indictment in 02 CRS 57952, but that no such conviction may be entered as to Count III of the same.

---

**[4]** Defendant argues next that the trial court erred by sentencing him in excess of the statutory maximum based on an aggravating factor not submitted to the jury and not admitted by defendant. Defendant argues he is entitled to a new sentencing hearing pursuant to *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, *reh'g denied*, 542 U.S. 961, 159 L. Ed. 2d 851 (2004). We agree.

In the instant case, defendant's sentence was aggravated based on a finding that "[t]he defendant took advantage of a position of trust or confidence to commit the offense." The trial court sentenced defendant at the top of the aggravated range to a term of 480 to 585 months. The aggravating factor was not found beyond a reasonable doubt by the jury and was not admitted by defendant. Therefore, we must remand for resentencing in conformity with the rulings in *Blakely* and *State v. Allen*, 359 N.C. 425, 615 S.E.2d 256 (2005).

**[5]** Defendant next contends that his sentences on the first degree rape and indecent liberties offenses violate his right to be free from double jeopardy. Defendant argues that, because the conduct tending to prove these two offenses was "identical," and because the date of offense alleged in the indictment for these offenses was the same, judgment may not be entered on the indecent liberties offense. We disagree.

Our appellate courts have uniformly rejected defendant's contention. *See, e.g., State v. Etheridge*, 319 N.C. 34, 352 S.E.2d 673 (1987); *State v. Fletcher*, 322 N.C. 415, 368 S.E.2d 633 (1988); *Rhodes*, 321 N.C. 102, 361 S.E.2d 578. This assignment of error is overruled.

No error in part, vacated in part, and remanded.

Judges HUNTER and CALABRIA concur.