STATE OF NORTH CAROLINA v. ANTWAN LATRELL STEPHENS, Defendant

No. COA05-502

(Filed 3 January 2006)

### 1. Evidence— hearsay—coconspirator's statement made before conspiracy established—harmless error

Although the trial court erred in an armed robbery and second-degree kidnapping case by admitting into evidence a hearsay statement made by defendant's coconspirator that was

made before the conspiracy had been established, the error was harmless because there was overwhelming evidence that defendant participated in the armed robbery of a convenience store even excluding the statement made by his coconspirator.

## 2. Kidnapping— second-degree—motion to dismiss—sufficiency of evidence—restraint

The trial court erred by denying defendant's motion to dismiss the charge of second-degree kidnapping, because: (1) the pushing of the victim and her walking to the cash register at gunpoint was an inherent and integral part of an armed robbery; (2) defendant did not do substantially more than force the victim to the cash register; (3) defendant's restraint of the victim did not expose her to a greater danger than that inherent in armed robbery; and (4) the victim's removal was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense.

## 3. Criminal Law— motion to continue—location of witness

The trial court did not abuse its discretion in an armed robbery and second-degree kidnapping case by denying defendant's motion to continue in order to locate a witness to testify regarding her motives for giving information to the district attorney and for testifying at trial even after another inmate testified that he overheard a conversation between the witness and defendant in which she indicated the only reason she testified against defendant was based on threats of prosecution by the district attorney, because: (1) the witness had previously testified at trial, and defense counsel had already cross-examined her; and (2) on recross-examination defense counsel had already had the opportunity to question the witness regarding her motive for giving information to the district attorney.

## 4. Appeal and Error— preservation of issues—failure to argue

Assignments of error that defendant failed to argue in his brief are deemed abandoned under N.C. R. App. P. 28(b)(6).

Appeal by Defendant from judgment entered 10 December 2004 by Judge D. Jack Hooks in Superior Court, Sampson County. Heard in the Court of Appeals 29 November 2005.

*Attorney General Roy Cooper, by Assistant Attorney General John C. Evans, for the State.*

*Ligon and Hinton, by Lemuel W. Hinton, for defendant-appellant.*

WYNN, Judge.

In general, a "statement is admissible as an exception to the hearsay rule if it is . . . a statement by a coconspirator of such party during the course and in furtherance of the conspiracy." N.C. Gen. Stat. § 8C-1, Rule 801(d) (2004). Defendant argues that the statements in this case were made prior to the formation of the conspiracy and thus, do not fit in this exception. Although we agree that the hearsay statements allowed in this case were made prior to the formation of the conspiracy, we uphold Defendant's conviction for armed robbery because the error was harmless.

Regarding a second issue in this appeal, we note that restraint which is an inherent, inevitable feature of armed robbery may not be used to convict a defendant of kidnapping. *See State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978); *State v. Allred*, 131 N.C. App. 11, 20, 505 S.E.2d 153, 158 (1998). In this case, Defendant contends that his second-degree kidnapping conviction must be set aside because the only restraint used was that necessary to complete the armed robbery. In light of *Fulcher* and *Allred*, we must agree that the facts of this case require the vacation of Defendant's conviction for second-degree kidnapping.

At trial, the State's evidence tended to show that on the evening of 21 March 2004, Defendant Antwan Latrell Stephens was waiting in a car outside the Budget Inn, located in Clinton, North Carolina. Defendant's friend, Dennis Smith, was in room eleven of the Budget Inn with Lakeshia Cooper. During that time, Mr. Smith received a phone call from Michael Loftin stating, "I'm going to make me a lick" and asking, "Where Antwan at?" Mr. Smith testified that "to make a lick" is slang for committing a robbery. Mr. Smith took the phone outside and gave it to Defendant. After talking with Mr. Loftin, Defendant asked Mr. Smith for a ride to Cliff's Fast Stop. During the ride, Defendant repeatedly stated that "we are going to make a mother f—king lick, son." Defendant asked Mr. Smith if he could come back to the room after the lick [robbery] and Mr. Smith said yes. At approximately 8:00 p.m., Defendant met Mr. Loftin at Cliff's Fast Stop and arranged to meet each other at the Budget Inn later that evening.

STATE v. STEPHENS

[175 N.C. App. 328 (2006)]

At approximately 2:40 a.m. on the morning of 22 March 2004, Melissa Licona was working at the Pep Mart in Clinton. Ms. Licona testified that she was cleaning the hot dog machine and turned when she heard the door open. Thereafter, Ms. Licona observed a male, wearing a camouflage jacket and a bandanna around his nose and mouth, with a shotgun six to eight inches from her face. The man said "Bitch, give me the money," and struck her in the back with the shotgun. The man in camouflage began pushing Ms. Licona toward the register. Another man wearing a two-tone gray and blue shirt and a black toboggan over his head and face, with home made eye holes cut into it, came into the store and asked, "Where the hundreds at? Where the hundreds?" The man in camouflage beat on the cash register until it opened. The man wearing the black toboggan took out a white plastic bag and dumped the contents of the cash drawer into the bag— $420.27 in cash (including a roll of quarters) and American flag U.S. Postage Stamps. The two men left and Ms. Licona called the police.

The entrance to the Budget Inn is approximately 714 feet from the entrance to the Pep Mart. Mr. Smith testified that Defendant and Mr. Loftin later returned to room eleven of the Budget Inn out of breath like they had been running. Mr. Loftin wore a camouflage jacket, had a bandanna over his shoulder, and carried a sawed-off shotgun. Defendant wore a gray and blue shirt. Mr. Smith testified that Mr. Loftin said "Man, we just licked the mother f—king store." And Defendant said "Man, you should have seen that sh-t. That sh-t was crazy as hell." Defendant then began pulling money out of a black toboggan with eye holes cut into it and out of a clear white plastic bag.

Meanwhile, Officers Robbie King, Hank Smith, John Bass, and Detective Sergeant David Turner of the Clinton Police Department responded to Ms. Licona's 911 call. While searching the area around the store for suspects, Officer Smith observed someone peeking out from behind a curtain covering the window in room eleven of the Budget Inn. When it appeared that the occupant of the room saw the officer, the curtain was abruptly shut. Detective Turner and Officers Smith and King knocked on the door of room eleven. Mr. Smith confirmed that he rented the room and consented to a search of the room. The officers entered the room and found Defendant, Ms. Cooper, and Mr. Smith in the room near the bed; Mr. Loftin in the bathroom with a sawed-off shotgun beside him on the floor; a camouflage jacket; a camouflage bandana; a Stevens 20 gauge pump sawed-off shotgun; a blue and gray long-sleeved sweatshirt; a

black toboggan with holes cut in it; $140.00 cash (including a roll of quarters) in the bathroom; and $149.00 cash next to a white plastic trash bag.

The State also presented testimony from Tasha Stamps who stated that she saw Defendant wearing a blue and gray shirt and that Defendant admitted to her that he and Mr. Loftin robbed the Pep Mart.

Defendant presented several witnesses in his defense including Mr. Loftin who testified that when he went to the Budget Inn, Mr. Smith retrieved a sawed-off shotgun from his car. He stated that he wore a blue and gray shirt and black toboggan and Mr. Smith wore a camouflage jacket and bandanna. The two went to Pep Mart and committed the armed robbery. Following the robbery, Mr. Loftin and Mr. Smith went back to the Budget Inn and sorted out the money in the bathroom. Mr. Loftin testified that at that time Ms. Cooper was lying on the bed smoking marijuana and Defendant was asleep on the floor.

The trial court also heard *voir dire* testimony of Christopher Parker, an inmate at the Sampson County Detention Facility, who testified that on the evening after Tasha Stamps testified at the trial, she came to the county jail and yelled to Defendant through the window. Although Mr. Parker did not see Ms. Stamps, he recognized her voice and overheard her statements to Defendant that the only reason she testified against Defendant was because of threats of prosecution by the district attorney. Defendant asked Ms. Stamps "why did she tell a story on him for," and she told Defendant she was going to write to him to explain. Defense counsel argued that Mr. Parker's testimony should be admitted into evidence under Rule 804(b)(3) of the North Carolina Rules of Evidence as a statement against Ms. Stamps's pecuniary interest. The trial court did not allow the testimony as there was no showing that Ms. Stamps was unavailable and denied Defendant's motion for a continuance to locate Ms. Stamps.

Defendant was indicted and found guilty of robbery with a dangerous weapon and second-degree kidnapping. The trial court sentenced Defendant to 103 to 133 months imprisonment for the robbery with a dangerous weapon charge and thirty-four to fifty months imprisonment for the second-degree kidnapping charge.

---

On appeal, Defendant argues that the trial court erred in (1) admitting hearsay statements into evidence; (2) denying his motion to

dismiss the charge of second-degree kidnapping; and (3) denying his motion to continue the trial.

**[1]** We first address Defendant's contention that the trial court erred by admitting a hearsay statement made by Defendant's co-conspirator, Mr. Loftin. Defendant argues that the statement was made before the conspiracy had been established and thus violated Rule 801(d)(E) of the North Carolina Rules of Evidence. While we agree with Defendant, we find this error was harmless.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2004). "A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . (E) a statement by a coconspirator of such party during the course and in furtherance of the conspiracy." N.C. Gen. Stat. § 8C-1, Rule 801(d). In order for the statements or acts of a co-conspirator to be admissible, there must be a showing that (1) a conspiracy existed and (2) that the acts or declarations were made by a party to it and in pursuance of its objectives (3) while the conspiracy was active, that is, after it was formed and before it ended. *State v. Williams*, 345 N.C. 137, 141, 478 S.E.2d 782, 784 (1996) (citing *State v. Tilley*, 292 N.C. 132, 138, 232 S.E.2d 433, 438 (1977)). "Statements made prior to or subsequent to the conspiracy are not admissible under this exception." *State v. Gary*, 78 N.C. App. 29, 36, 337 S.E.2d 70, 75 (1985).

The State must establish a *prima facie* case of conspiracy without relying on the declaration sought to be admitted. *Id.* However, " '[b]ecause of the nature of [conspiracy] courts have recognized the inherent difficulty in proving the formation and activities of the criminal plan and have allowed wide latitude in the order in which pertinent facts are offered in evidence.' " *Tilley*, 292 N.C. at 139, 232 S.E.2d at 438-39 (quoting *State v. Conrad*, 275 N.C. 342, 347, 168 S.E.2d 39, 43 (1969)).

At trial, Dennis Smith testified for the State that on the night of the robbery he received a telephone call from Mr. Loftin, and the following conversation ensued:

Q: What did Mr. Loftin say to you when you picked up your cell phone?

A: He was like, "Man, I just got robbed for five thousand dollars. Some Mexicans just robbed me."

Q: And did he say anything after that?

A: Yes, sir. He said, he was like, "I'm going to make me a lick." He was like, "Where Antwan at?" I was like, "He's outside in my car."

Q: Now he told you he was going to go make a lick. What does that mean, to make a lick?

A: Rob somebody. Rob something.

A conspiracy is an unlawful agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means, and may be shown by circumstantial evidence. *State v. Cotton*, 102 N.C. App. 93, 95-96, 401 S.E.2d 376, 378, *cert. denied*, 329 N.C. 501, 407 S.E.2d 543 (1991).

While the independent evidence presented at trial tended to show that Mr. Loftin and Defendant conspired to rob the Pep Mart on 22 March 2004, there is no evidence that suggests that the conspiracy was in existence at the time Mr. Loftin made the statements to Mr. Smith. In fact, the evidence tends to show that the conspiracy began immediately after Mr. Loftin and Mr. Smith's conversation. Mr. Smith testified that, after speaking with Mr. Loftin, Defendant asked him for a ride to Cliff's Fast Stop and repeatedly stated that "we are going to make a mother f—king lick, son." Mr. Loftin testified that at approximately 8:00 p.m., he met Defendant at Cliff's and then arranged to meet later at the Budget Inn. This evidence shows at best that the conspiracy to rob Pep Mart began after Mr. Smith spoke with Mr. Loftin. Statements made prior to the conspiracy are not admissible under Rule 801(d)(E). *Gary*, 78 N.C. App. at 36, 337 S.E.2d at 75. Therefore, the trial court erred in allowing Mr. Smith to testify about the contents of his conversation with Mr. Loftin as the statements were hearsay and did not fit into the exception in Rule 801(d)(E) of the North Carolina Rules of Evidence.

But our inquiry must further determine whether the State has met the burden of showing that the trial court's erroneous admission of the hearsay statements was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2004). Indeed, there is overwhelming evidence that Defendant participated in the armed robbery of Pep Mart, even excluding the statement made by Mr. Smith. Mr. Smith testified that Defendant: (1) repeatedly stated that "we are going to make a mother f—king lick, son[;]" (2) returned to the Budget Inn with Mr. Loftin; (3) wore a gray and blue shirt; (4) responded to Mr. Loftin statement, "Man, we just licked the mother f—king store[,]" by stat-

ing, "Man, you should have seen that sh-t. That sh-t was crazy as hell[;]" (5) pulled money out of a black toboggan with eye holes cut into it and out of a clear white plastic bag. Ms. Licona testified that during the robbery of Pep Mart, one of the robbers wore a two-tone gray and blue shirt and a black toboggan over his head and face, with home made eye holes cut into it. Tasha Stamps testified that on the evening of 21 March 2004, she saw Defendant wearing a blue and gray shirt, and that after the robbery, Defendant told her that he and Mr. Loftin had robbed Pep Mart. Moreover, the State's evidence showed that Defendant was found in room eleven of Budget Inn with Mr. Loftin. The police found the following items in the room: a camouflage jacket, a camouflage bandana, a Stevens 20 gauge pump sawed-off shotgun, a blue and gray long-sleeved sweatshirt, a black toboggan with holes cut in it, $140.00 cash (including a roll of quarters) in the bathroom, $149.00 cash next to a white plastic trash bag.

In short, the State's evidence shows that the jury did not need to consider Mr. Smith's statement regarding his conversation with Mr. Loftin, as there is overwhelming evidence that Defendant committed the armed robbery. Accordingly, we hold the admission of the hearsay statement harmless error as it did not prejudice Defendant.

[2] We next address Defendant's contention that the trial court erred in denying his motion to dismiss the charge of second-degree kidnapping as the State failed to produce sufficient evidence that there was restraint of the victim that was not necessary to the robbery.

When reviewing a motion to dismiss, we view "the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Morgan,* 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004) (citing *State v. Gladden,* 315 N.C. 398, 430, 340 S.E.2d 673, 693, *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986)), *cert. denied,* —— U.S. ——, 163 L. Ed. 2d 79 (2005). If we find that "substantial evidence exists to support each essential element of the crime charged and that defendant was the perpetrator, it is proper for the trial court to [have denied] the motion." *Id.* (citing *State v. Malloy,* 309 N.C. 176, 178, 305 S.E.2d 718, 720 (1983)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown,* 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citing *State v. Smith,* 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980)).

A defendant is guilty of the offense of second-degree kidnapping if he (1) confines, restrains, or removes from one place to another (2)

a person sixteen years of age or over (3) without the person's consent, (4) for the purpose of facilitating the commission of a felony. N.C. Gen. Stat. § 14-39(a)(2) (2004). "Our Supreme Court, however, has recognized that 'certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim' and has held that restraint 'which is an inherent, inevitable feature of [the] other felony' may not be used to convict a defendant of kidnapping." *Allred*, 131 N.C. App. at 20, 505 S.E.2d at 158 (quoting *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351). "The key question . . . is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping 'exposed [the victim] to greater danger than that inherent in the armed robbery itself[.]' " *State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (quoting *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981)).

In *Irwin*, our Supreme Court said the defendant's forcing the victim to move to the back of the store at knife point was "an inherent and integral part of the attempted armed robbery," because the journey was necessitated by the defendant's objective that the victim obtain drugs by going to the prescription counter at the back of the store and opening the safe. 304 N.C. at 103, 292 S.E.2d at 446. The court held the victim's removal was "a mere technical asportation and insufficient to support conviction for a separate kidnapping offense." *Id.*

In *State v. Muhammad*, 146 N.C. App. 292, 295-96, 552 S.E.2d 236, 238 (2001), the defendant placed the victim in a choke hold, hit him in the side three times, wrestled with the victim on the floor, grabbed the victim again around the throat, pointed a gun at his head and marched him to the front of the store. This Court held that, "these actions constituted restraint beyond what was necessary for the commission of common law robbery[,]" as the defendant "did substantially more than just force [the victim] to walk from one part of the restaurant to another." *Id.* at 296, 552 S.E.2d at 238.

In *Pigott*, the defendant threatened the victim with a gun, then bound the victim's hands and feet while searching the office and apartment for money. 331 N.C. at 210, 415 S.E.2d at 561. Our Supreme Court held "that all the restraint necessary and inherent to the armed robbery was exercised by threatening the victim with the gun. When defendant bound the victim's hands and feet, he 'exposed [the victim to a] greater danger than that inherent in the armed robbery itself.' " *Id.* (citation omitted).

Here, the facts are more aligned with the facts in *Irwin* than in *Muhammad* or *Pigott*. Defendant or his accomplice struck Ms. Licona in the back with the shotgun and then pushed her toward the register. Ms. Licona being pushed and walked to the cash register at gun point was "an inherent and integral part of the [] armed robbery." *Irwin*, 304 N.C. at 103, 292 S.E.2d at 446. Defendant did not do "substantially more" than force Ms. Licona to the cash register. *See Muhammad*, 146 N.C. App. at 296, 552 S.E.2d at 238. Defendant's restraint of Ms. Licona did not expose her to a greater danger than that inherent in an armed robbery. *Pigott*, 331 N.C. at 210, 415 S.E.2d at 561. Ms. Licona's removal "was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense." *Irwin*, 304 N.C. at 103, 292 S.E.2d at 446. Accordingly, Defendant's conviction for second-degree kidnapping must be vacated.

[3] Finally, Defendant argues that the trial court erred in denying his motion to continue. On the last day of the trial, the trial court heard *voir dire* testimony of Christopher Parker, an inmate at the Sampson County Detention Facility, who testified that he overheard a conversation between Tasha Stamps and Defendant in which she indicated that the only reason she testified against Defendant was because of threats of prosecution by the district attorney. The trial court denied defense counsel's motion for a continuance to locate Ms. Stamps. Defendant argues that the trial judge abused his discretion "and violated [his] constitutional right to confront his accuser with witnesses and present a defense[.]" We disagree.

The standard of review of a trial court's ruling on a motion for a continuance,

> is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review. When a motion to continue raises a constitutional issue, the trial court's ruling is fully reviewable upon appeal. Even if the motion raises a constitutional issue, a denial of a motion to continue is grounds for a new trial only when defendant shows both that the denial was erroneous and that he suffered prejudice as a result of the error.

*State v. Jones*, 172 N.C. App. 308, 311-12, 616 S.E.2d 15, 18 (2005) (quoting *State v. Taylor*, 354 N.C. 28, 33-34, 550 S.E.2d 141, 146 (2001)).

Defendant contends that the trial court's denial of his motion to continue to locate Ms. Stamps violated his "constitutional right to

confront his accuser ... as guaranteed by the Sixth Amendment to the United States Constitution[.]" However, Ms. Stamps had previously testified at trial and defense counsel already cross-examined her. On recross-examination defense counsel questioned Ms. Stamps regarding her motive for giving information to the district attorney:

Q: Okay; and then you voluntarily went to Mr. Weddle [assistant district attorney]?

A: Yes, sir.

Q: Why did you choose to go to him six months later?

A: This is now when the trial is. I mean, this is now when the trial is. I just decided to do the right thing.

Q: So you found out he was going to trial?

A: Yes, sir.

Q: And so then you went to the DA?

A: Yes, sir.

As Defendant already had the opportunity to question Ms. Stamps regarding her motives for giving information to the district attorney and for testifying at trial, there is no constitutional issue involved in the trial court's denial of the motion to continue. Therefore, the trial court's decision is reviewed on an abuse of discretion standard. *Jones*, 172 N.C. App. at 311-12, 616 S.E.2d at 18. As the trial court's decision was not manifestly unsupported by reason, we find no gross abuse of discretion. *Id.* Accordingly, this assignment of error is overruled.

[4] Defendant failed to argue his remaining assignments of error; therefore, they are deemed abandoned. N.C. R. App. P. 28(b)(6).

Vacated in part; No prejudicial error in part.

Judges STEELMAN and SMITH concur.