NIEMEYER, Circuit Judge,
concurring in part and dissenting in part:
This case presents the question whether Torrell Vann’s sentence for possessing a firearm in violation of 18 U.S.C. § 922(g) was properly enhanced under ACCA for his three previous convictions under the North Carolina indecent liberties statute, N.C. Gen.Stat. § 14-202.1. More specifically, we must determine whether each of Vann’s three previous convictions constitutes a “violent felony,” as that term is used in 18 U.S.C. § 924(e)(2).
The district court concluded that Vann’s three previous convictions under the North Carolina indecent liberties statute constituted violent felonies and accordingly sentenced him to a statutory minimum sentence of 15-years’ imprisonment. I would affirm the district court’s sentence.
Because North Carolina’s indecent liberties statute contains at least two separate generic offenses for ACCA purposes, it is appropriate, as the majority of this court concludes, to employ the modified categorical approach articulated in Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), to determine whether the offenses used to enhance Vann’s sentence were “violent felonies.” Under the modified categorical approach, I would conclude (1) that each of Vann’s three previous convictions necessarily encompassed both of the offenses set forth in N.C. Gen.Stat. § 14-202.1, given the conjunctive wording of the charging docu *808 ments and Vann’s unqualified guilty pleas to the charges so stated; and (2) that the latter of the two offenses in § 14-202.1— “[wjillfully committing] or attempt[ing] to commit any lewd or lascivious act upon or ■with the body or any part or member of the body of any child of either sex under the age of 16 years” — was properly classified as a “violent felony” under 18 U.S.C. § 924(e)(2)(B)(ii), applying the analysis prescribed by the Supreme Court in its recent decision in Sykes v. United States, - U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011).
A majority of the judges of this court conclude that even though the modified categorical approach may be applied in determining whether Vann’s previous convictions were for violent felonies, the Shepard-approved documents before the district court were not sufficient to determine whether Vann’s previous convictions qualified as violent felonies for ACCA purposes. In supporting this holding, Judge Keenan’s opinion, in which four judges concur, concludes that subsection (a)(1) of N.C. Gen. Stat. § 14-202.1 “reference[s] statutorily-proscribed behavior that is merely ‘improper’ and, thus, is non-violent. By contrast, the elements of [subsection (a)(2) ] proscribe acts that under the ACCA would be considered violent in nature,” citing Sykes. Ante, at 800-01, 800 n. 2. Judge Wilkinson appears to agree more generally that “it is clearly possible for defendants to be convicted for various forms of conduct that would constitute ‘different crimes’ [under the indecent liberties statute], some of which would generically be ACCA predicates.” Ante, at 805.
Judge King’s opinion, in which three judges concur, concludes, however, that even if it were determined that Vann willfully committed or attempted to commit a lewd of lascivious act upon the body of a child, in violation of N.C. Gen.Stat. § 14-202.1(a)(2), the crime would not constitute a “violent felony” for ACCA purposes. In reaching this conclusion, Judge King’s opinion fails to conduct the Sykes analysis, simply concluding ipse dixit that Vann’s crimes did not place his victims at serious potential risk of injury. See ante, at 781-82. Instead of conducting the Sykes analysis, he applies an irrelevant and discarded standard that, he suggests, requires that the crime, in order to be a violent felony, involve “physical contact” or a “touching” or perhaps even purposeful, violent, and aggressive conduct. Ante, at 780-81, 782, 782-83, 785-86.
Because I conclude that we can determine that Vann’s guilty pleas included pleas to the generic crime encompassed in “willfully committing or attempting to commit a lewd or lascivious act upon or with the body” of a child, as prohibited in § 14-202.1(a)(2), I reach the question of whether these previous convictions were violent felonies under ACCA and conclude, as the majority concludes, that they were violent felonies.
Accordingly, I concur in those portions of the judgment holding that the modified categorical approach may be used in this case[1] and concluding that a violation of N.C. Gen.Stat. § 14-202.1(a)(2) constitutes a violent felony under ACCA,[2] and I dis *809 sent from the judgment insofar as it holds that the Shepard-approved documents in this case do not justify a determination that Vann pleaded guilty to violations of subsection (a)(2) of the statute.
I
In the early morning hours of January 20, 2008, officers in Lumberton, North Carolina, responded to a 911 call from Torrell Vann’s ex-girlfriend, who complained that Vann was insisting that he be let inside her house. By the time officers arrived, however, Vann had left. About an hour later, Vann returned and entered the ex-girlfriend’s house through an unlocked back door. When the ex-girlfriend asked him to leave, Vann pulled out a pistol, put it to his head, and threatened to kill himself if she would not talk to him. Although Vann put the weapon away when the ex-girlfriend became upset and eventually left the residence, the ex-girlfriend again called the police. A short time later, officers stopped Vann’s vehicle, finding that his speech was slurred, his license had been suspended, and he was in possession of a Bersa .380 pistol and ammunition.
Vann was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and the indictment included the allegation that he had three previous convictions for “violent felonies,” as defined in 18 U.S.C. § 924(e)(2)(B). Vann pleaded guilty to the charge pursuant to a written plea agreement.
Vann’s presentence report described his extensive criminal history, including three prior convictions for taking indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1. The statute provides:
(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.
(b) Taking indecent liberties with children is punishable as a Class F felony.
The probation officer concluded that Vann’s indecent liberties convictions were “violent felonies,” and thus classified Vann as an armed career criminal under ACCA, subjecting Vann to a Sentencing Guidelines range of 180 to 210 months’ imprisonment and a mandatory minimum sentence of 180 months’ imprisonment.
At sentencing, Vann objected to the probation officer’s application of the ACCA enhancement, arguing that his indecent liberties convictions were not violent felonies under Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), and United States v. Thornton, 554 F.3d 443 (4th Cir.2009) (holding that Virginia’s statutory rape offense is not a violent felony under ACCA). The government, in contrast, argued that the matter was controlled by United States v. Pierce, 278 F.3d 282 (4th Cir.2002), which held that a violation of N.C. Gen.Stat. § 14-202.1 is a “crime of violence” for purposes of the Sentencing Guidelines’ career offender en *810 hancement, U.S.S.G. §§ 4B1.1, 4B1.2(a). The district court overruled Vanris objection, held that Vann was an armed career criminal under ACCA, and sentenced him to 180 months’ imprisonment. This appeal followed.
II
A violation of 18 U.S.C. § 922(g) ordinarily carries a maximum sentence of 10 years’ imprisonment. 18 U.S.C. § 924(a)(2). But ACCA provides a sentencing enhancement based on the defendant’s criminal history, providing that a person who violates § 922(g) and has “three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another” must be sentenced to at least 15 years’ imprisonment. Id. § 924(e)(1). The Act defines a “violent felony” as “any crime punishable by imprisonment for a term exceeding one year” that:
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another!;.]
Id. § 924(e)(2)(B).
The government contends that Vanris three indecent liberties convictions qualify as “violent felonies” under the final, or “residual” clause in subparagraph (ii) of § 924(e)(2)(B), which qualifies crimes that “present[ ] a serious potential risk of physical injury to another” as “violent felonies.” To reach this conclusion, it makes three points.
First, the government asserts that N.C. Gen.Stat. § 14-202.1 contains two distinct offenses for ACCA purposes, one set forth in subsection (a)(1) and the other in subsection (a)(2), such that the “modified categorical approach” is appropriate to determine which of the offenses formed the basis for Vanris prior convictions. See Chambers v. United States, 555 U.S. 122, 126, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (applying the modified categorical approach to a statute which “place[d] together in a single numbered statutory section several different kinds of behavior”). Second, it maintains that Vann was convicted of committing both offenses contained in the indecent liberties statute because he pleaded guilty to charging documents which alleged that he had violated subsection (a)(1) and subsection (a)(2). See Shepard v. United States, 544 U.S. 13, 25, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (plurality opinion) (indicating that the nature of a prior conviction may be determined by “the defendant’s own admissions”). And third, it claims that the offense described in subsection (a)(2), “[w]illfully commit[ting] or attempting] to commit any lewd or lascivious act upon or with the body ... of any child ... under the age of 16 years,” qualifies as a “violent felony” because it ordinarily involves the degree of risk required by the residual clause and the Supreme Court’s decisions interpreting that clause. See 18 U.S.C. § 924(e)(2)(B)(ii); Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011); James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007).
Vann contests all three of these points. He argues that the modified categorical approach is inapplicable because the North Carolina courts have construed the indecent liberties statute as containing “a single offense.” State v. Hartness, 326 N.C. 561, 391 S.E.2d 177, 180 (1990); see State v. Jones, 172 N.C.App. 308, 616 S.E.2d 15, 20 (2005). He maintains that these state court decisions are binding upon us, such *811 that we must evaluate the indecent liberties statute as a whole, using the more traditional “categorical approach.” He claims that under that approach, his convictions cannot qualify as violent felonies because the indecent liberties statute’s two subsections, taken together, cover a broad range of conduct, some of which is not “purposeful, violent, and aggressive.” Be-gay, 553 U.S. at 143-44, 128 S.Ct. 1581; see State v. Etheridge, 319 N.C. 34, 352 S.E.2d 673, 682 (1987) (stating that the indecent liberties statute is intended to cover a broad range of behavior).
Vann insists that the result remains the same if the modified categorical approach does apply, either because the records of his prior convictions are not properly before the court, thus leaving us without any basis upon which to conclude that he was convicted of the more violent subsection (a)(2) offense; or because his guilty pleas, like a jury verdict, could not establish which alternative statutory element formed the basis for his convictions. See Maltar-Espinoza v. Gonzales, 478 F.3d 1080, 1082-83 & n. 3 (9th Cir.2007).
Finally, Vann contends that even if both of the issues described above are resolved in the government’s favor, his convictions still do not qualify as violent felonies because N.C. Gen.Stat. § 14-202.1(a)(2) does not require physical contact between the defendant and the victim, see State v. Hammett, 182 N.C.App. 316, 642 S.E.2d 454, 458 (2007), and therefore does not categorically involve violent and aggressive behavior, see Begay, 553 U.S. at 143-44, 128 S.Ct. 1581.
The parties’ positions thus raise three questions: (1) whether the modified categorical approach should be used to classify Vann’s indecent liberties convictions; (2) whether Vann’s guilty pleas establish that he was convicted of the more violent of the two offenses set forth in N.C. Gen.Stat. § 14-202.1, as stated in subsection (a)(2); and (3) whether “[wjillfully commit[ting] or attemptpng] to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years” qualifies as a “violent felony” under 18 U.S.C. § 924(e)(2)(B)(ii). I address each of these questions seriatim.
A
Beginning with Taylor, the Supreme Court has held that determining whether previous convictions qualify as “violent felonies” under ACCA “generally requires [a sentencing] court to look only to the fact of conviction and the statutory definition of the prior offense.” Taylor, 495 U.S. at 602, 110 S.Ct. 2143. This “categorical approach” essentially requires courts to consider only the elements of the offense of conviction and not the facts giving rise to the conviction. See Chambers, 555 U.S. at 125, 129 S.Ct. 687 (“[ACCA’s] defining language, read naturally, uses ‘felony to refer to a crime as generally committed. And by so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing ... whether the present defendant’s prior crime, as committed on a particular occasion, did or did not involve violent behavior”). Thus, when confronting the question in James whether an attempted burglary conviction was a “violent felony,” the Court “examine[d], not the unsuccessful burglary the defendant attempted on a particular occasion, but the generic crime of attempted burglary.” Chambers, 555 U.S. at 125, 129 S.Ct. 687 (characterizing James, 550 U.S. at 204-06, 127 S.Ct. 1586).
The Court has qualified this general principle, however, by adding that the categorical approach may be modified to “permit the sentencing court to go beyond the mere fact of conviction” in a narrow range *812 of eases where the statute of conviction essentially contains multiple offenses. See Taylor, 495 U.S. at 602, 110 S.Ct. 2143; see also Nijhawan v. Holder, 557 U.S. 29, 129 S.Ct. 2294, 2299, 174 L.Ed.2d 22 (2009). In these instances, the modified categorical approach helps courts “choose the right category,” Chambers, 555 U.S. at 126, 129 S.Ct. 687, and therefore “which crime within a statute the defendant committed,” United States v. Woods, 576 F.3d 400, 405 (7th Cir.2009).
Two recent ACCA cases decided by the Supreme Court, Chambers and Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), demonstrate how the modified categorical approach works in practice. In each of those cases, the defendant was potentially subject to a sentence enhancement under ACCA, depending on how one of the defendant’s previous convictions was classified. Identifying the proper classification required further analysis, however, because the statute underlying the previous conviction was, on its face, divisible into multiple offenses, in that it listed within a single section two or more groupings of elements, each of which (1) covered a conceptually distinct criminal act and (2) was sufficient to constitute a complete offense.
In Chambers, the defendant’s prior conviction arose under an Illinois statute which provided:
[Any felon who] intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony; however, [a felon] who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony.
Ill. Comp. Stat., ch. 720, § 5/31-6(a) (West Supp.2008). Stressing that “[t]he nature of the behavior that likely underlies a statutory phrase matters,” the Chambers Court applied the modified categorical approach because the statute contained “at least two separate crimes”: “failure to report,” on the one hand, and “escape from custody” on the other. Chambers, 555 U.S. at 126-27, 129 S.Ct. 687. To support this conclusion, the Court reasoned (1) that “failure to report” “seem[ed] less likely to involve a risk of physical harm than the less passive, more aggressive behavior” associated with escape crimes, and (2) that the statute listed failure to report and escape separately in its title and body. Id. at 127,129 S.Ct. 687.
Likewise, in Johnson the Court assessed a defendant’s conviction under a Florida battery statute which proscribed
1. Actually and intentionally touch[ing] or striking] another person against the will of the other; or
2. Intentionally causing] bodily harm to another person.
Fla. Stat. § 784.03(l)(a) (2003). Because the statute’s elements were stated in the disjunctive and covered qualitatively different types of behavior, the Court concluded that it consisted of three separate offenses for ACCA purposes: (1) intentionally causing bodily harm; (2) intentionally striking a victim; or (3) actually and intentionally touching a victim. See Johnson, 130 S.Ct. at 1269. With this application of the modified categorical approach to the defendant’s battery conviction, the Court provided the general rule for using the modified categorical approach when confronted with a statute having alternative elements: “When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes ... the ‘modified categorical approach’ ... permits a court to *813 determine which statutory phrase was the basis for the conviction.” Id. at 1273 (internal citation omitted).
In keeping with Chambers and Johnson, this court has applied the modified categorical approach when “different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes for ACCA purposes,” United States v. Rivers, 595 F.3d 558, 562-63 (4th Cir.2010), or when “the fact of conviction and the statutory definition of the offense are unduly vague or ambiguous,” United States v. Harcum, 587 F.3d 219, 223 (4th Cir.2009).
Applied to the instant case, these precedents set up an initial, binary decision for the court to make: if the indecent liberties statute contains only one substantive offense, the categorical approach applies. But if it contains two or more substantive offenses, the modified categorical approach must be used instead.
The North Carolina indecent liberties statute at issue here is no different than the laws at issue in Johnson and Chambers, as it contains multiple, alternative elements, each of which addresses a different form of criminal behavior. As does the majority of this court, I conclude, as a matter of federal law, that the modified categorical approach is the proper device for evaluating Vann’s prior convictions.
On its face, the indecent liberties statute provides that a defendant who is “16 years of age or more and at least five years older than the child in question” is guilty of “taking indecent liberties with children if ... he either ”:
(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.
N.C. Gen.Stat. § 14-202.1(a) (emphasis added). The indecent liberties statute is in this regard quite similar to the Florida battery law at issue in Johnson, as “the elements of [each] offense” are stated in the “disjunctive.” Johnson, 130 S.Ct. at 1269. North Carolina courts have made this point repeatedly, observing that a defendant’s guilt may be “established by a finding of various alternative elements,” Hartness, 391 S.E.2d at 180 (emphasis added); that “G.S. § 14-202.1 states disjunctively two alternative means of proving one element of the offense of indecent liberties,” Jones, 616 S.E.2d at 20 (emphasis added and omitted); and that “the statute sets forth two theories upon which a conviction for indecent liberties may be based,” State v. Moss, No. COA07-607, 2008 WL 435095, at *2, 2008 N.C.App. LEXIS 237, at *5 (N.C.Ct.App. Feb. 19, 2008) (emphasis added).[3]
The North Carolina indecent liberties statute, N.C. Gen.Stat. § 14-202.1, is also analogous to the escape provision addressed in Chambers, as both “placet ] together in a single numbered statutory section several different kinds of behavior.” Chambers, 555 U.S. at 126, 129 S.Ct. 687 (emphasis added). Just as “[t]he behavior that likely underlies a failure to report [is] *814 less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody,” id. at 127, 129 S.Ct. 687, the flashing, illicit photography, and other acts covered by subsection (a)(1) of the North Carolina statute present a lower risk of physical harm than instances in which a defendant ‘“willfully commits or attempts to commit [a] lewd or lascivious act upon or with the body ” of a child covered by subsection (a)(2) of the North Carolina statute (emphasis added). Compare State v. Every, 157 N.C.App. 200, 578 S.E.2d 642, 648 (2003) (cataloging typical subsection (a)(1) offenses, some of which can be committed at a distance), with State v. Wilson, 87 N.C.App. 399, 361 S.E.2d 105, 106-07 (1987) and State v. Byrd, 67 N.C.App. 168, 312 S.E.2d 528, 530 (1984) (describing garden-variety subsection (a)(2) violations involving physical contact or sexual conduct occurring in close quarters).
Subsections (a)(1) and (a)(2) of the North Carolina statute also correspond to two different sections of the Model Penal Code, on which both the Supreme Court and our court have relied to differentiate between various “generic” crimes for ACCA purposes. See Taylor, 495 U.S. at 598 n. 8, 110 S.Ct. 2143; United States v. Peterson, 629 F.3d 432, 436 (4th Cir.2011). Specifically, the offense defined in subsection (a)(2) is quite similar to what the Model Penal Code labels “sexual assault.” Under the Model Penal Code, “A person who has sexual contact with another not his spouse, or causes such other to have sexual contact with him, is guilty of sexual assault ... if ... the other person is less than [16] years old and the actor is at least [four] years older than the other person.” Model Penal Code § 213.4 (1962) (brackets in original). The Model Penal Code defines “sexual contact” as “any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire.” Id. Taken together, these elements closely approximate subsection (a)(2)’s coverage of “lewd or lascivious act[s] upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.” Both provisions have a gratification or lasciviousness component, both require a similar age differential, and both focus on physical contact of a sexual or intimate nature. See State v. Strickland, 77 N.C.App. 454, 335 S.E.2d 74, 75 (1985) (“Section (a)(2) ... concerns a lewd or lascivious act committed or attempted on a child ” (emphasis added)).
The crime contained in subsection (a)(1), in contrast, is more closely aligned with the Model Penal Code’s definition of “indecent exposure.” A person is guilty of indecent exposure under the Model Penal Code “if, for the purpose of arousing or gratifying sexual desire of himself or of any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm.” Model Penal Code § 213.5 (1962). Subsection (a)(1) contains a nearly identical arousal or gratification element, and, while it proscribes a broader range of conduct, it also unquestionably applies to indecent exposure of the kind described in the Model Penal Code. See, e.g., State v. Lawrence, 360 N.C. 368, 627 S.E.2d 609, 610 (2006) (describing a “game” in which the defendant exposed himself to a child as a “specific incident ] of indecent liberties with a minor”); Strickland, 335 S.E.2d at 75 (holding that masturbating outdoors, 62 feet away from minor children, violated subsection (a)(1)). It does not, on the other hand, contain a “sexual contact” element akin to that found in the Model Penal Code’s definition of “sexual assault.” See Strickland, 335 *815 S.E.2d at 75 (differentiating subsections (a)(1) and (a)(2) on this basis).
Because subsections (a)(1) and (a)(2) substantially correspond to two different Model Penal Code provisions, precedent dictates that they should be treated as presumptively different generic crimes mandating application of the modified categorical approach. Cf. Peterson, 629 F.3d at 436-37.
Vann offers a superficially appealing, albeit flawed, syllogism in response. He reasons that (1) federal courts are “bound by [state courts’] interpretation of state law, including [their] determination of [a statute’s] elements,” Johnson, 130 S.Ct. at 1269; (2) the North Carolina Supreme Court has stated that “[t]he crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts,” Hartness, 391 S.E.2d at 180 (emphasis added); therefore (3) we must treat the indecent liberties statute as a single offense and apply the categorical approach in our ACCA analysis.
This argument rests upon a mistaken understanding of the role state court decisions, such as Hartness, play in the ACCA analysis. We are bound by North Carolina’s construction of § 14-202.1, including, for instance, its definition of various terms, its identification of the necessary elements of an offense, or its application of exceptions. This rule requires us, for example, to adhere to state court decisions which interpret the phrase “with any child” in subsection (a)(1) to encompass both the physical and “constructive” presence of the child. See State v. McClees, 108 N.CApp. 648, 424 S.E.2d 687, 689 (1993). At the same time, state court decisions cannot bind us on questions of federal law, such as whether a crime contains more than one offense and thus requires that we use the modified categorical approach in our ACCA analysis. Even if the North Carolina courts had answered this question — which they have not — we would not be bound by their conclusion.
In Johnson, the Supreme Court observed that it was “bound by the Florida Supreme Court’s interpretation of state law, including its determination of the elements of’ Florida’s battery statute. 130 S.Ct. at 1269. The Court thus relied on the Florida Supreme Court’s interpretation of the statute’s “actually and intentionally touching” element as encompassing “any intentional physical contact, ‘no matter how slight,’ ” in determining whether the defendant’s prior battery conviction qualified as an ACCA predicate. Id. at 1269-70 (quoting State v. Hearns, 961 So.2d 211, 218 (Fla.2007)). At the same time, however, the Johnson Court rejected the defendant’s argument that it was “bound by the Florida Supreme Court’s conclusion in Hearns that [unwanted physical touching] does not constitute ‘physical force’ ” for ACCA purposes. Id. at 1269. It explained:
The meaning of “physical force” in § 924(e)(2)(B)(i) is a question of federal law, not state law. And in answering that question we are not bound by a state court’s interpretation of a similar — or even identical — state statute.

Id.

[4]

The Supreme Court’s handling of state law in Shepard reinforces this point for the *816 case before us. In Shepard, the Court analyzed a defendant’s prior convictions arising under a Massachusetts statute which, in a single sentence, proscribed two different types of burglary: “generic” burglary of buildings and “non-generic” burglary of cars and boats. See Shepard, 544 U.S. at 17, 125 S.Ct. 1254. The Court concluded that the modified categorical approach applied to the defendant’s convictions, given the statute’s alternative elements, see id. at 26, 125 S.Ct. 1254, and did so despite the fact that Massachusetts state courts treat burglary as a single offense, see Commonwealth v. Rudenko, 74 Mass.App.Ct. 396, 907 N.E.2d 254, 257 (2009) (referring to “[t]he crime of breaking and entering” (emphasis added)).
Shepard, Johnson, and the rest of the body of ACCA case law make clear that it is the elements of an offense, and not the label state law puts upon it, that determines whether the modified categorical approach applies. As the Court explained in Taylor, “Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled ‘robbery’ or ‘burglary.’ ” 495 U.S. at 588-89, 110 S.Ct. 2143. Whether or not a crime is subject to explication through the modified categorical approach thus turns on its “characteristics” rather than the way in which it is “labeled by state law.” Id. at 589, 110 S.Ct. 2143. Under this principle, the North Carolina Supreme Court’s conclusion in Hartness that the indecent liberties statute contains “various alternative elements,” 391 S.E.2d at 180, disposes of Vann’s federalism argument.
Vann presses yet further, arguing that even if the statute contains two different elements, the North Carolina courts nonetheless treat each of them “interchangeably.” This practice, Vann contends, means that the two elements collapse into one as a practical matter. Although decisions applying one subsection do occasionally rely upon precedents involving the other, see State v. Kistle, 59 N.C.App. 724, 297 S.E.2d 626 (1982), or state that the two subsections overlap in some circumstances, see Wilson, 361 S.E.2d at 108, the North Carolina courts have nonetheless consis *817 tently differentiated between subsections (a)(1) and (a)(2), for instance by emphasizing differences in their respective elements, see, e.g., Strickland, 335 S.E.2d at 75. Any lingering doubt that the textual differences between subsections (a)(1) and (a)(2) matter is surely put to rest by State v. Moss, a recent case in which the North Carolina Court of Appeals held that a trial court committed plain error by using a jury instruction based on subsection (a)(2) when the defendant was charged under subsection (a)(1). See No. COA07-607, 2008 WL 435095, at *1-3, 2008 N.C.App. LEXIS 237, at *4-7 (N.C.Ct.App. Feb. 19, 2008).
At bottom, this case involves a routine application of the rule expressed in Johnson: “When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes ... the ‘modified categorical approach’ ... permits a court to determine which statutory phrase was the basis for the conviction.” 130 S.Ct. at 1273 (internal citation omitted). The North Carolina indecent liberties statute states disjunctively two elements, each of which relates to criminal behavior that is “different in-kind” from the other. United States v. Bethea, 603 F.3d 254, 258 n. 3 (4th Cir.2010).
The North Carolina indecent liberties statute therefore undoubtedly calls for application of the modified categorical approach under federal law, as a majority of this court holds today.
B
On concluding that the modified categorical approach should underlie the ACCA analysis here, the next step is to determine which of the two possible offenses formed the basis of Vann’s convictions. See Chambers, 555 U.S. at 126, 129 S.Ct. 687 (stating that courts must use the modified categorical approach to “choose the right category”). And to do so, we consult a narrow class of “conclusive records made or used in adjudicating guilt,” which, when the defendant pleads guilty, includes “the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, [and any] comparable judicial record[s].” Shepard, 544 U.S. at 21, 26, 125 S.Ct. 1254.
Here, the district court relied on the presentence report’s descriptions of Vann’s three indecent liberties convictions, referring to an indictment and “court records.” As to the 1991 conviction, the report stated:
According to the indictment, on December 17, 1991, Vann willfully did take and attempt to take immoral, improper, and indecent liberties with a child ... for the purpose of arousing and gratifying sexual desire and did commit a lewd and lascivious act upon the body of said child.
J.A. 51 (emphasis added). The report indicated that Vann pleaded guilty to this charge. Id. Although the paragraphs of the presentence report describing Vann’s two other indecent liberties convictions arising from conduct in July 1998 and August 1998, which were also obtained through guilty pleas, state that they were based on “court records,” id. at 52, the descriptions of these offenses were materially identical to the description of the first, again tracking the statutory language, indicating that they too were based on the charging documents. Because the presentence report was derived from Shepard-approved sources and Vann did not object to its substance during the sentencing hearing, the district court was entitled to rely on it in classifying Vann’s prior offenses as violent felonies. See United *818 States v. Thompson, 421 F.3d 278, 285 (4th Cir.2005).
Even so, accommodating our request, the parties provided us with the actual charging documents and judgment forms from Vann’s prior convictions, which are now part of the record in this court and which confirm that the presentence report accurately described the charges to which Vann pleaded guilty. See ECF No. 46 (Feb. 22, 2010). Specifically, the December 1991 indictment alleged that Vann
willfully and feloniously did take and attempt to take immoral, improper, and indecent liberties with the child named below for the purpose of arousing and gratifying sexual desire and did commit and attempt to commit a lewd and lascivious act upon the body of the child named below. At the time of this offense, the child named below was under the age of 16 years and the defendant named above was over 16 years of age and at least five years older than the child. The name of the child is [SLH],
The July 1998 charging document (an information) included the somewhat more detailed statement — that Vann
willfully and feloniously did take and attempt to take immoral, improper, and indecent liberties with the child named below for the purpose of arousing and gratifying sexual desir[e] and did commit and attempt to commit a lewd and lascivious act upon [ENL], a child 13 years of age, the defendant being more than six years older than the child and was not lawfully married to the victim ....
The August 1998 charging document (also an information) included a statement similar to that included in the July 1998 charging document and named the same victim.
At oral argument, Vann’s counsel asserted that “the court of appeals cannot consider an indictment that was not first produced to the district court.” Oral Arg. at 9:13:11. Our precedent, however, does not support his claim. We have held that appellate courts “may properly take judicial notice” of state court proceedings that were not part of the district court record, particularly when such proceedings are “relevant and critical to the matter on appeal.” Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989); see also Lolavar v. de Santibanes, 430 F.3d 221, 224 n. 2 (4th Cir.2005) (taking “judicial notice of the records of a court of record”).
Thus, the Shepard-approved materials documenting Vann’s previous convictions demonstrate that Vann “necessarily admitted” to violating both subsections of the indecent liberties statute each time he pleaded guilty to the charges (in December 1991, July 1998, and August 1998). All three charging documents alleged that Vann “did take and attempt to take immoral, improper, and indecent liberties” with a child “for the purpose of arousing and gratifying sexual desire” and “did commit and attempt to commit a lewd and lascivious act upon the body” of the child. Further, in each case Vann pleaded guilty to the offenses charged without any reservation. Just as the charges against Vann covered violations of North Carolina General Statutes § 14-202.1(a)(l) and (a)(2), so too did his admissions, as embodied in his unqualified guilty pleas. See Shepard, 544 U.S. at 25, 125 S.Ct. 1254 (plurality opinion) (noting that the nature of a prior conviction may be determined by “the defendant’s own admissions”).
In contrast to a jury verdict, which may rely on either alternative statutory element to support a finding of guilt, with the logical result that the verdict cannot “necessarily” be said to depend on either element in particular, see United States v. Robinson, 627 F.3d 941, 956 (4th Cir.2010); *819 United States v. Gonzales, 484 F.3d 712, 715 (5th Cir.2007), in a pleaded case, it is the defendant who controls the basis for the conviction, see, e.g., United States v. White, 408 F.3d 399, 402 (8th Cir.2005) (holding that a defendant’s guilty plea did not constitute an admission to facts the defendant expressly disavowed during his plea hearing); Valansi v. Ashcroft, 278 F.3d 203, 216 (3d Cir.2002) (indicating that a defendant “may ... plead guilty to only one of the allegations required to prove an element of her crime”).
Because the defendant holds that control when pleading guilty, courts have routinely held that when a defendant does plead guilty without reservation, he necessarily admits all of the material facts alleged in the charging document. See, e.g., United States v. Gosselin World Wide Moving, N.V., 411 F.3d 502, 515 (4th Cir.2005); White, 408 F.3d at 402; United States v. Still, 102 F.3d 118, 124 (5th Cir.1996); United States v. Kelsey, 15 F.3d 152, 153 (10th Cir.1994); United States v. Tolson, 988 F.2d 1494, 1501 (7th Cir.1993); United States v. Parker, 874 F.2d 174, 178 (3d Cir.1989); see also 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 172 (4th ed.2008) (recognizing this position as the majority rule). But see United States v. Cazares, 121 F.3d 1241, 1246-48 (9th Cir.1997) (concluding that a guilty plea admits only “the facts essential to the validity of the conviction”).
This approach comports with the Supreme Court’s observation in United States v. Broce, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), that “[b]y entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.” Id. at 570, 109 S.Ct. 757 (emphasis added). It is also consistent with the way North Carolina courts have interpreted guilty pleas, see State v. Thompson, 314 N.C. 618, 336 S.E.2d 78, 81 (1985) (“A valid guilty plea ... serves as an admission of all the facts alleged in the indictment or other criminal process” (emphasis added)); State v. Cobb, 187 N.C.App. 295, 652 S.E.2d 699, 701 (2007) (same), a point at least one other circuit has found significant when applying the modified categorical approach, see United States v. Morales-Martinez, 496 F.3d 356, 358-60 (5th Cir.2007).
The Fifth Circuit’s decision in Still well illustrates how this principle applies to situations such as the one presented here. In Still, the defendant “pleaded guilty to a conjunctive charge of ‘using and carrying a firearm ... during and in relation to the commission of a drug trafficking crime.’ ” Still, 102 F.3d at 124. This guilty plea, the court explained, operated differently than a jury verdict:
A disjunctive statute may be pleaded conjunctively and proven disjunctively. In other words, despite having charged Still with “using and carrying” a firearm during and in relation to a drug trafficking crime, the government had only to prove that Still “used or carried” a firearm to convict Still of count three. When Still pleaded guilty to count three, he admitted both to using and to carrying a firearm during and in relation to a drug trafficking crime.
Id. at 124-25 (final emphasis added).
Each of Vann’s guilty pleas is precisely like the one at issue in Still, as Vann pleaded guilty to the compound charges against him without any reservation. As a result, his guilty pleas establish that he “necessarily admitted” to all of the allegations in the charging documents — ie., that he violated subsections (a)(1) and (a)(2) of the indecent liberties statute each time he was convicted. See Shepard, 544 U.S. at 26, 125 S.Ct. 1254.
*820 C
Because Vann pleaded guilty to both substantive offenses set forth in North Carolina’s indecent liberties statute, he must be classified as an armed career criminal if either of those offenses qualifies as a “violent felony” under ACCA. See 18 U.S.C. § 924(e)(2)(B). Thus, in conducting the analysis, it makes sense to focus on the apparently more violent offense set forth in N.C. Gen.Stat. § 14-202.1(a)(2), involving the commission of a “lewd or lascivious act upon or with the body” of a child.
A previous conviction qualifies as a “violent felony” under the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii) so long as it is “punishable by imprisonment for a term exceeding one year” and “involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B). Two recent Supreme Court decisions, Sykes and James, provide the relevant analysis for determining when a previous conviction “involves conduct that presents a serious potential risk of physical injury to another.”
In Sykes, the Court held that a defendant’s previous conviction for using a motor vehicle to “knowingly or intentionally ... flee[ ] from a law enforcement officer” fell within the residual clause and was thus a “violent felony.” Sykes, 131 S.Ct. at 2270, 2277 (internal quotation marks omitted). Explaining the relevant analysis, the Court focused on the statutory language to determine whether a subject crime was, in degree of risk, sufficiently comparable to the offenses enumerated in § 924(e)(2)(B)(ii) — burglary, extortion, arson, and crimes involving the use of explosives. It stated that the subject crime “involves the requisite risk when” that crime involves a risk of injury “ ‘comparable to that posed by its closest analog among the enumerated offenses.’ ” Sykes, 131 S.Ct. at 2273 (quoting James, 550 U.S. at 203, 127 S.Ct. 1586). The analysis thus involves a “commonsense” comparison between the subject crime and the enumerated crimes in terms of risk. Id. at 2274. Using this approach, the Court concluded that vehicular flight was sufficiently similar in degree of risk to arson and burglary so as to make it a crime of violence under ACCA. It noted with respect to burglary, for instance, that the crime was “dangerous because it can end in confrontation leading to violence. The same is true of vehicle flight, but to an even greater degree.” Id. at 2273. It explained:
The attempt to elude capture is a direct challenge to an officer’s authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase. The felon’s conduct gives the officer reason to believe that the defendant has something more serious than a traffic violation to hide.

Id.

The Sykes Court also used a statistical analysis to confirm these “commonsense conclusion[s].” Id. at 2274-75. Specifically, the Court pointed to data indicating that vehicular flight results in “4 injuries to ... nonsuspects per 100 pursuits,” whereas burglary and arson account for only 3.2 and 3.3 injuries per 100 incidents, respectively — an increase in risk of roughly 25%. See id.; see also id. at 2279-80 (Thomas, J., concurring in the judgment).
In James, the other key residual clause case, the Supreme Court held that a violation of Florida’s attempted burglary statute was a “violent felony” under § 924(e)(2)(B)(ii). See 550 U.S. 192, 127 S.Ct. 1586. The Court stressed that the residual clause does not “requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony.” Id. at 208, 127 S.Ct. 1586. Instead, a crime *821 need only present the required degree of risk “in the ordinary case.” Id. The Court illustrated this concept by noting:
One could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone — for example, a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors. But ACCA does not require metaphysical certainty. Rather, § 924(e)(2)(B)(ii)’s residual provision speaks in terms of a “potential risk.” These are inherently probabilistic concepts. Indeed, the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple “risk,” much less a certainty.
Id. at 207-08, 127 S.Ct. 1586. In essence, James directs courts to focus on the heartland of a particular crime when analyzing it for ACCA purposes — a point reaffirmed in Sykes by the Court’s focus on the risk posed by “typical” instances of vehicular flight. See Sykes, 181 S.Ct. at 2273, 2275.
Like Vann, the defendant in Sykes argued that “Begay and Chambers require ACCA predicates to be purposeful, violent, and aggressive in ways that” his crime was not. Sykes, 131 S.Ct. at 2275 (emphasis added). The Sykes Court, however, expressly rejected this claim, explaining that Sykes had “over-read[ ]” the Court’s prior ACCA precedents, all but one of which focused on the level of risk as the determining factor. See id. (“In general, levels of risk divide crimes that qualify [as violent felonies] from those that do not”). The Court observed:
The phrase “purposeful, violent, and aggressive” has no precise textual link to the residual clause, which requires that an ACCA predicate “otherwise involv[e] conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii). The Begay phrase is an addition to the statutory text. In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same. As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us. Begay involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict liability, negligence, or recklessness crime and because it is, for the reasons stated and as a categorical matter, similar in risk to the listed crimes, it is a crime that “otherwise involves conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii).
131 S.Ct. at 2275-76 (emphasis added).
As the Court indicated, most crimes must now be analyzed according to the risk they present, rather than whether they are “purposeful, violent, and aggressive,” as was the case under Begay. Sykes, 131 S.Ct. at 2275-76. Of course, the language in Begay will likely continue to be relevant when applying the ACCA standard to offenses “akin to strict liability, negligence, and recklessness crimes.” Sykes, 131 S.Ct. at 2276. But see id. at 2277 (Thomas, J., concurring in the judgment) (“The majority errs by implying that the ‘purposeful, violent, and aggressive’ test may still apply to [strict liability] offenses”); id. at 2285 (Scalia, J., dissenting) (disapproving of the majority’s implication); id. at 2289 n. 1 (Kagan, J., dissenting) (preferring to retain the “purposeful, violent, and aggressive” test when *822 it is not redundant with the risk analysis). We need not resort to that analysis here, however, because “specific intent is an element of the offense of taking indecent liberties with children.” State v. Craven, 312 N.C. 580, 324 S.E.2d 599, 602 (1985).[5]
The question thus framed by Sykes and James’ analysis is whether “[w]illfully committing] or attempting] to commit any lewd or lascivious act upon or with the body” of a child ordinarily involves a degree of risk comparable to that posed by any of the example crimes contained in § 924(e) (2) (B) (ii). I submit that it surely does.
Typical violations of subsection (a)(2) present a potential risk of physical injury to the child that is at least as serious as the risk facing a victim of arson, burglary, or extortion. To begin with, subsection (a)(2) applies only when the perpetrator is “16 years of age or more and at least five years older than the child in question.” N.C. Gen.Stat. § 14-202.1. That age differential gives rise to a power disparity between the adult perpetrator and the child victim which, like the threat element in extortion cases, naturally poses a risk that the perpetrator will employ coercive conduct that can readily escalate to physical violence. Cf. Banks, 370 S.E.2d at 407 (‘We also bear in mind the enhanced power and control that adults, even strangers, may exercise over children who are outside the protection of home or school” (quoting State v. Hicks, 79 N.C.App. 599, 339 S.E.2d 806, 809 (1986))).
This risk is compounded by subsection (a)(2)’s second element, which requires the willful commission or attempted commission of a “lewd or lascivious act” by the perpetrator. N.C. Gen.Stat. § 14-202.1(a)(2). Inherent in any “lewd or lascivious act” is a drive for sexual satisfaction, frequently accompanied by an abdication of rational thought and self control. Such a loss of control injects unpredictability into the encounter and increases the odds that the perpetrator will resort to violent behavior to achieve his objective if met with resistance, just as a perpetrator of burglary or extortion might resort to violence to overcome resistance. Cf. James, 550 U.S. at 203-04, 127 S.Ct. 1586.
Finally, subsection (a)(2) violations present a serious potential risk of injury because they must involve a sexual act committed “upon or with the body” of a minor child. N.C. Gen.Stat. § 14-202.1(a)(2). Perpetrators ordinarily satisfy this element by engaging in intimate physical contact with the child victim, such as fondling, French kissing, or sexual penetration. See, e.g., State v. Baker, 333 N.C. 325, 426 S.E.2d 73, 75-76 (1993); State v. Banks, *823 322 N.C. 753, 370 S.E.2d 398, 400 (1988). Such contact often presents a potential risk of harm to children, who may be unable to endure adult sexual contact without injury. See United States v. Daye, 571 F.3d 225, 231 (2d Cir.2009); cf. David Finkelhor et ah, U.S. Department of Justice, Office of Justice Programs, Sexually Assaulted Children: National Estimates and Characteristics 5 (2008), available at http://www.ncjrs.gov/pdffilesl/ojjdp/ 214383.pdf (stating that 17% of juvenile sexual assault[6] victims sustain injuries). A 17% injury rate for juvenile sexual assault victims is far greater than the 3.2% injury rate for burglary victims, as found in Sykes. While the study included conduct that may have a higher incidence of physical harm, like rape, it is surely indicative of the potential for physical harm in sexual assault crimes generally. Even when the perpetrator does not actually touch the victim, the “upon or with the body” requirement dictates that the offending conduct will take place in such close physical proximity to the victim that the adult has the ability to restrict the child’s freedom of movement, thereby creating a serious risk that the child will be injured if he or she attempts to escape. See Pierce, 278 F.3d at 289. Either way, the potential for injury to the victim inherent in the encounter easily surpasses the “low baseline level [of] risk” associated with burglary. See Sykes, 131 S.Ct. at 2278 (Thomas, J., concurring in the judgment).
Other courts have come to the same conclusion when assessing similar statutes. In Daye, for example, the Second Circuit observed that “a sexual act inflicted upon a child by an adult ordinarily creates a serious potential risk of physical harm to the child” because “the nature of the conduct and the child’s relative physical weákness give rise to a substantial likelihood that the adult may employ force to coerce the child’s accession.” 571 F.3d at 232. The court thus had “no doubt” that engaging in a sexual act with a minor, as proscribed by Vermont law, posed at least as much of a risk of injury as burglary:
Both crimes may often involve, but do not necessarily require, the intentional use of force. Indeed, given the peculiar susceptibility of minors to coercion by adults into sexual acts, we think it more likely that violent and aggressive force will actually be employed in the course of committing the crime at issue here [sexual assault of a child] than in the course of committing an ordinary burglary. See Tennessee v. Garner, 471 U.S. 1, 21-22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (citing statistical evidence to the effect that “burglaries only rarely involve physical violence”).
Id. at 234; accord Pierce, 278 F.3d at 290 (“[C]hild abuse ... presents] a serious potential risk of physical injury to the child, a danger that is quite similar in character to the potential injury to persons involved in arson or burglary”).
A body of subsection (a)(2) case law reinforces these points. In State v. Banks, 322 N.C. 753, 370 S.E.2d 398 (1988), for instance, the defendant, a 30 year-old man, “waited until all the other adults were in another part of the house” and then got into bed with a Mend’s twin eight year-old daughters. Id. at 407. At that point, the defendant
kissed each of them, putting his tongue in their mouths, ears and noses. He touched and rubbed their genitals, inserting his finger several times into each *824 twin’s vaginal area. The victims asked defendant to stop but he persisted. They told him he was hurting them, asked him to leave and cried. Defendant put his hand over their mouths when they tried to cry out. He threatened to slap them and to kill their mother if they told her what had happened.
Id. at 400. Likewise, in State v. Askew, No. COA06-507, 2007 WL 1246409, 2007 N.CApp. LEXIS 863 (N.C.Ct.App. May 1, 2007), the defendant was convicted of six separate violations of subsection (a)(2), all of which involved physical contact between the defendant and the victim. See id. at *1-2, 4, 2007 N.C.App. LEXIS 863 at *3-5, 10. These convictions included instances in which the defendant “pok[ed] [his daughter’s] private part,” “thr[ew] [her] on the ground,” and molested her after commanding her to “get out of the shower.” Id. at *2, 2007 N.C.App. LEXIS 863 at *4-5. The defendant’s sexual advances were also accompanied by physical abuse and threats, as the defendant “hit” his daughter, “threw her down a flight of stairs,” and told her that she would be sent to “a bad foster home where they would kill [her]” if she told anyone about the abuse. Id. at *2, 2007 N.C.App. LEXIS 863 at *6.
Other subsection (a)(2) cases, while not always involving express threats or violence, nonetheless present a “potential risk” of injury, see 18 U.S.C. § 924(e)(2)(B)(ii), based on the location of the sexual encounter, the power relationship between the perpetrator and victim, and the physical nature of the perpetrator’s conduct. See, e.g., State v. Wilson, 87 N.C.App. 399, 361 S.E.2d 105, 106-07 (1987) (adult defendant “inserted] a foreign object into [a] child’s vagina” during an incident which occurred in their “shared residence”).[7]
Taken together, these considerations lead to the conclusion, reached by a majority of this court, that the conduct proscribed by N.C. GemStat. § 14-202.1(a)(2) is categorically “similar in risk” — if not greater in risk — “to the listed crimes,” Sykes, 131 S.Ct. at 2276, and therefore that a conviction under § 14-202.1(a)(2) qualifies as a “violent felony” under 18 U.S.C. § 924(e)(2)(B)(ii).
Vann raises two counter-arguments, which Judge King accepts. But neither is persuasive. First he asserts that one can violate § 14-202.1(a)(2) without making physical contact with the victim, and that subsection (a)(2) violations are therefore not categorically “violent and aggressive.”[8] For support, he focuses on a single case, State v. Hammett, in which the North Carolina Court of Appeals rejected a defendant’s argument that “to be convicted under G.S. § 14-202.1(a)(2), the accused must physically touch the victim.” 642 S.E.2d at 459.
*825 Vann’s reliance on Hammett is problematic in several respects. To begin with, the Sykes decision strongly suggests that a crime need not be “violent” or “aggressive” to qualify as a violent felony under § 924(e)(2), so long as it poses the requisite degree of risk. See Sykes, 131 S.Ct. at 2275-76. Thus, it is absolutely immaterial that there was no actual violence or physical contact in Hammett, because under ACCA, it is the “potential risk” of violence — in the typical case — that counts. See James, 550 U.S. at 207-08, 127 S.Ct. 1586 (“[T]he combination of the two terms [‘potential’ and ‘risk’] suggests that Congress intended to encompass possibilities even more contingent or remote than a simple ‘risk,’ much less a certainty”).
Moreover, Hammett itself exemplifies the serious potential risk of physical harm that is typically present in subsection (a)(2) eases. There, the defendant was convicted of seven counts of indecent liberties, all of which occurred in a residence shared by the adult defendant and his daughter, who was between five and ten years old when the violations were committed. See Hammett, 625 S.E.2d at 169. One of these counts — the one on which Vann focuses all of his attention — involved an incident in which the defendant forced his young daughter to “watch a pornographic DVD with him” while he masturbated. See Bill of Particulars, Hammett, at *3-4 (N.C.CtApp. filed Feb. 2, 2004). The other six counts, however, all involved intimate, physical contact between the defendant and his daughter, such as instances in which the defendant forced his daughter to straddle him in bed and “bounce up and down upon him,” simulating sexual intercourse, or in which the defendant touched his daughter’s genitalia “while she lay naked on a bed.” Id. at *2-3. Thus even in Hammett, the case Vann highlights for its lack of risk and physicality, 85% of the indecent liberties charges involved sexual contact between an adult and a child, amply demonstrating the “potential risk” of physical injury to the child.
Furthermore, the one count involving no physical contact in Hammett is the exact kind of outlier scenario that the Supreme Court in James directed lower courts to discount. There, the Court stressed that the proper focus in residual clause cases is on the risk “typically” associated with an offense — that is, the risk present “in the ordinary case.” 550 U.S. at 208, 127 S.Ct. 1586 (emphasis added); see United States v. Billups, 536 F.3d 574, 580 (7th Cir.2008) (“The ‘serious potential risk’ language of the residual clause ... is indicative of probability, rather than inevitability; therefore, an offense need not pose a serious risk of harm in every conceivable factual manifestation in order to constitute a crime of violence”). Under James, it simply does not matter that one can commit burglary or arson without creating any appreciable risk of injury to others, for instance by breaking into “an unoccupied structure located far off the beaten path and away from any potential intervenors,” 550 U.S. at 207, 127 S.Ct. 1586, or that one can imagine subsection (a)(2) violations that might be fairly characterized as nonrisky. What matters is that when an adult perpetrator “[w]illfully commits or attempts to commit any lewd or lascivious act upon or with the body” of a minor child, the encounter ordinarily involves a substantial risk to the child’s safety, either through the sexual abuse itself, or through the perpetrator’s actions in securing the child’s accession to the act and subsequent silence about the matter. Cf. Daye, 571 F.3d at 232; Banks, 370 S.E.2d at 400.
Vann’s second counter-argument relies heavily on our holding in Thornton. In that decision, we held that Virginia’s carnal knowledge offense, which makes it a crime to “carnally know[ ], without the use *826 of force, a child thirteen years of age or older but under fifteen years of age,” Va. Code Ann. § 18.2-63, does not qualify as a violent felony under ACCA. Thornton, 554 F.3d at 444. Although Virginia’s carnal knowledge offense overlaps to some extent with North Carolina’s indecent liberties offense, important and material differences exist that distinguish that statute from the one at issue here. Most notably, the Virginia offense is, by its own terms, committed “without the use of force,” while the North Carolina crime is not so limited. Indeed, as noted above, the North Carolina crime often involves coercive conduct that can readily escalate to physical violence. The North Carolina statute also requires that the defendant be at least 16 years old and at least 5 years older than the victim, heightening the power differential and risk to the child and reducing the likelihood for any semblance, however impossible to give, of “consent.” The result of these differences is that a typical violation of subsection (a)(2) involves a greater risk of injury than an ordinary violation of the Virginia statute considered in Thornton, and therefore it qualifies as a violent felony under ACCA, even though Virginia’s carnal knowledge offense does not.[9]
Ill
Just as burglary, attempted burglary, arson, and extortion pose “a serious potential risk of physical injury” to others, a typical violation of N.C. GemStat. § 14-202.1(a)(2), involving “a lewd or lascivious act upon or with the body” of any child, poses a similar risk to the victim. Indeed, based on a canvas of the statute’s elements and North Carolina case law, it appears that the relevant risk under the North Carolina statute is even greater. For these reasons, I have little difficulty in concluding, as does the majority, that a typical violation of § 14-202.1(a)(2) would constitute a “violent felony” for purposes of ACCA.
In addition to the statutory need to apply ACCA to enhance Vann’s sentence, the context of Vann’s conduct confirms that need in this case. Congress designed ACCA to incapacitate individuals whose prior conduct “makes [it] more likely that [they], later possessing a gun, will use that gun deliberately to harm a victim.” Begay, 553 U.S. at 145, 128 S.Ct. 1581. Vann’s criminal history is of precisely that nature. Vann has pleaded guilty to taking indecent liberties with a child on three separate occasions, two of which involved a victim who was only 13 years old. J.A. 50-56. This crime involves a substantial power differential between perpetrator and victim, and the perpetrator was necessarily in close physical proximity to the victim. Individuals who commit this type of crime are just the type of people ACCA means to dissuade from possessing a gun.
At bottom, Vann is legally and factually an armed career criminal who should be sentenced accordingly.
Judge Shedd has authorized me to indicate that he joins this opinion.

. This portion of the judgment is joined by eight judges (Chief Judge Traxler and Judges Wilkinson, Niemeyer, Shedd, Agee, Keenan, Wynn and Diaz).

. This portion of the judgment is joined by seven judges (Chief Judge Traxler and Judges Niemeyer, Shedd, Agee, Keenan, Wynn, and Diaz). In her opinion, representing five judges, Judge Keenan concludes that a violation of N.C. Gen.Stat. § 14-202.1(a)(2) is a violent felony, stating, "a violation of subsection (a)(2) of the indecent liberties statute ordinarily ‘presents a serious potential risk of physical injury to another' within the mean *809 ing of the ACCA's residual clause. See 18 U.S.C. § 924(e)(2)(B)(ii).” Ante, at 800 n. 2. Thus, because I, with the concurrence of Judge Shedd, reach the same conclusion, seven judges (a majority of the twelve sitting on this case) conclude that a violation of subsection (a)(2) would constitute a violent felony for purposes of ACCA.

. Although we are normally bound by the North Carolina Supreme Court’s construction of the elements of the underlying offense, see Johnson v. United States, - U.S. -, 130 S.Ct. 1265, 1269, 176 L.Ed.2d 1 (2010), where, as here, the North Carolina Supreme Court has not passed upon all of the relevant issues, we may consider and defer to North Carolina intermediate court decisions, see Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997, 1002 (4th Cir.1998).

. Judge King’s opinion, purporting to apply North Carolina law, states that the North Carolina courts have ruled that the indecent liberties statute constitutes a single offense and that therefore the use of the modified categorical approach is inappropriate. This conclusion, however, is flawed.
Once the elements of a state-law crime have been defined by state law, the question whether the statute contains two crimes so as to *816 justify application of the modified categorical approach is a question of federal, not North Carolina, law. See Johnson, 130 S.Ct. at 1269-70; Taylor, 495 U.S. at 589, 110 S.Ct. 2143.
Furthermore, the North Carolina courts do recognize that the two subsections of the indecent liberties statute provide alternative elements of one offense. See Jones, 616 S.E.2d at 20 (noting that the statute "states disjunctively two alternative means of proving one element of the offense” (emphasis omitted)); Hartness, 391 S.E.2d at 180 (noting the indecent liberties statute’s "alternative elements”); Strickland, 335 S.E.2d at 75 (treating subsections (a)(1) and (a)(2) of the indecent liberties statute distinctively).
Indeed, Judge King cites Jones to support its statement that the crime of indecent liberties is a single offense, without recognizing that the same case also holds that the indecent liberties statute contains alternative elements for violating that single offense. See Jones, 616 S.E.2d at 20. In Jones, the defendant was charged with two counts of taking indecent liberties based on a single act of sexual intercourse with a child. See id. The State attempted to justify both charges by arguing that "[sjubsections (a)(1) and (a)(2) are separate criminal offenses with different elements.” Id. But the court logically rejected this argument, holding that "although the statute sets out alternative acts that might establish an element of the offense, a single act can support only one conviction.” Id. Thus, Jones stands not for the proposition that subsections (a)(1) and (a)(2) constitute a single, undifferentiated offense, but rather that one incident may not support separate convictions under each subsection. Indeed, Jones explicitly undercuts Judge King’s argument by its pronouncement that N.C. Gen.Stat. § 14-202.1 "states disjunctively two alternative means of proving one element of the offense of indecent liberties.” Id.

. Judge King's opinion, continuing its misplaced application of the Begay standard to this case, see, e.g., ante, at 18 ("[A]Ithough Sykes may be said to distance the Court from its earlier emphasis on purposeful, violent, and aggressive conduct, the essential hallmarks of Begay were reaffirmed”); ante, at 781 ("Importantly, a violation of the [North Carolina] Statute does not require physical contact”), also recognizes that Begay’s analysis is limited to crimes of the kind before the Court in Begay, such as ones involving strict liability, ante, at 780. To justify application of the Begay standard, Judge King concludes that the North Carolina indecent liberties statute "resonates in strict liability, reminiscent of the Begay DUI offense.” Ante, at 781. This conclusion, however, is clearly wrong. The North Carolina statute is a specific intent statute, not a strict liability statute. As the statutory text makes clear, indecent liberties offenses must be committed "[w]illfully” by the offender. N.C. Gen.Stat. § 14-202.1(a). Moreover, the North Carolina courts have amplified this point, stating that "specific intent is an element of the offense of taking indecent liberties with children.” State v. Craven, 312 N.C. 580, 324 S.E.2d 599, 602 (1985); see also State v. Creech, 128 N.C.App. 592, 495 S.E.2d 752, 756 (1998) (same); State v. Connell, 127 N.C.App. 685, 493 S.E.2d 292, 294 (1997) (same).

. The study defined sexual assault to include actual or attempted rape or other sexual contact, including contact through clothes when the child is coerced to engage in such contact. Id. at 3, 11 n. 1.

. Indeed, it can be noted, that in Pierce, this court conducted an exhaustive statistical analysis of the physical danger presented to children by ail violations of N.C. Gen.Stat. § 14-202.1, including both subsections (a)(1) and (a)(2), and found that based on a review of 150 reported convictions between 1980 and 2002, "in 98% of the cases, the crime [was] committed in situations where the victim [was] in such close proximity to the perpetrator that the victim was exposed to the serious risk of injury.” Pierce, 278 F.3d at 289 & n. *. Surely, a 98% exposure to risk of injury passes muster under Sykes to show the risk in "typical” convictions. See Sykes, 131 S.Ct. at 2273, 2275.

. Judge King also notes, repeatedly, the absence of physical contact or touching. See, e.g., ante at 780-81, 782, 782-83, 785-86. But, as we explain, that observation is immaterial to the analysis because it is the potential risk of injury that is critical. See 18 U.S.C. § 924(e)(2)(B)(ii); James, 550 U.S. at 207-08, 127 S.Ct. 1586.

. Moreover, after Sykes, Thornton may no longer be good law. Sykes relied heavily on statistical evidence regarding risk, and statistical evidence might show that the risk of injury from conduct violating Virginia’s statute is actually higher than the 3.2% risk associated with burglary. See Sykes, 131 S.Ct. at 2274-75; cf. David Finkelhor et al., U.S. Dept, of Justice, Office of Justice Programs, Sexually Assaulted Children: National Estimates and Characteristics 5 (2008), available at http://www.ncjrs.gov/pdffiles 1/ojjdp/ 214383.pdf.